LEO JANDRISITS *et al.*, Plaintiffs, v. THE VILLAGE OF RIVER GROVE, Defendants (The Village of River Grove, Third-Party Plaintiff-Appellant; Triggi Construction, Inc., Third-Party Defendant-Appellee).

First District (6th Division)    No. 1—94—3501

Opinion filed July 12, 1996.—Rehearing denied September 30, 1996.

Robert K. Bush, Dean W. Krone, and Jennifer A. Pritz, all of Ancel, Glink, Diamond, Cope & Bush, P.C., of Chicago, for appellant.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Francis A. Spina and Paul P. Pobereyko, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

This appeal involves construction of that part of the Construction Contract Indemnification for Negligence Act (the Indemnity Act or the Act) which voids agreements that indemnify persons for their own negligence. 740 ILCS 35/0.01 *et seq.* (West 1994). The Village of River Grove (Village) appeals from an order granting summary judgment to Triggi Construction, Inc. (Triggi). The basis of the judge's holding was that the indemnity agreement between Triggi and the Village violated the Act.

In 1987, the Village hired Triggi to do sidewalk replacement work in the Village; the work was completed in 1987. Triggi replaced several sidewalk squares in front of a residence at 2458 Erie Street.

In March 1989, Leo Jandrisits (Leo) slipped on snow-covered ice on the sidewalk in front of 2458 Erie Street. He and his wife, Delores, filed a complaint against the Village, alleging that the Village negligently caused the sidewalk to become and remain in a dangerous and hazardous condition, failed to inspect and repair the sidewalk and failed to warn pedestrians of the dangerous condition of the sidewalk. Specifically, it was alleged that the Village allowed the sidewalk to "become depressed and situated with such a decline of its surface, so as to allow various artificial accumulations of ice to form." In an amended complaint the Jandrisitses added counts against the owners of the residence in front of which Leo fell. None of the complaints contained any allegations against Triggi. Summary judgment was subsequently entered for the owners of the residence, and no appeal was taken from that order.

The Village filed a motion for summary judgment and argued that the depression in the sidewalk was minor and not actionable. In

response, the Jandrisitses produced an affidavit executed by Peter Majewski, an architect and the Jandrisitses' expert. According to Majewski, the replacement of the sidewalk slabs on either side of where Leo fell "created or accentuated an unnatural basin that created an artificial accumulation of ice." The Village's motion for summary judgment was denied on June 18, 1991.

On August 29, 1991, the attorney for the Village sent a letter to Triggi and Triggi's insurance carrier tendering the defense of the Jandrisitses' complaint. The letter alleged that the "[p]laintiff is claiming that the work done by Triggi caused an artificial accumulation of ice to form." The letter also referred to the contract between Triggi and the Village and to a certificate of insurance executed by Triggi which showed the Village as an additional insured on Triggi's general liability policy and excess liability policy. The letter concluded that "[b]ecause plaintiff is basing his claim of injury *solely* on the repairs done by Triggi Construction, the Village is entitled to coverage as an additional insured under the aforementioned policies of insurance." (Emphasis added.) Triggi and its insurer denied the tender.

On February 13, 1992, the Village filed a third-party complaint against Triggi. Count I sought contribution from Triggi; count II alleged that Triggi had breached its contract by refusing to defend and indemnify the Village and to procure insurance; and count III asked for a declaration that Triggi was obliged to defend and indemnify the Village in the Jandrisits action.

At this point it is appropriate to explain that the construction contract between Triggi and the Village required Triggi to defend and indemnify the Village for losses "caused or resulting or claimed to be caused or resulting from the work or services of the Contractor or those for whom he is responsible."

After the Village took the deposition of Majewski, it filed a motion for summary judgment against Triggi on counts II and III. It based its motion on the deposition testimony of Majewski, which was in substance the same as his previously submitted affidavit. Triggi filed a cross-motion for summary judgment on those counts. The trial judge denied the Village's motion for summary judgment and granted Triggi's motion. As noted, the judge based his ruling on his holding that the agreement between the Village and Triggi violated the Indemnity Act.

The judge also denied the Village's second motion for summary judgment in the Jandrisits action, and the case was assigned for trial. (The record does not contain the second motion for summary judgment.) Triggi entered into a settlement agreement with the Jan-

drisitses, and count I of the third-party complaint, the contribution action, was dismissed. On the following day the Village also settled with the Jandrisitses.

We note that the judge who denied the Village's second motion for summary judgment said that "this condition existed in the light most favorable to the Plaintiff for at least a year. Evidence exists from which a jury could conclude that the defect was apparent to a trained inspector when the work was completed. The condition recreated itself at each rainfall or thaw. The Village had a multi-department inspection policy. There is ample evidence River Grove was at least constructively aware of the condition."

■ The Indemnity Act provides as follows:

"§ 1. With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

* * *

§ 3. This Act does not apply to construction bonds or insurance contracts or agreements." 740 ILCS 35/1, 3 (West 1994).

On its face, the indemnity agreement is not the type of indemnity agreement the Act prohibits. It is clear from the unambiguous language of the agreement that Triggi agreed to indemnify the Village from only Triggi's negligence and did not agree to indemnify the Village for the Village's own negligence.

In a case involving almost identical language, *Motor Vehicle Casualty Co. v. GSF Energy, Inc.*, 193 Ill. App. 3d 1, 549 N.E.2d 884 (1989), the court held that, on its face, an indemnity agreement did not violate the Indemnity Act. The agreement in that case provided:

"Indemnity. Contractor [Hatfield] hereby agrees to defend, indemnify and hold harmless Getty [GSF] *** from and against any and all suits, liability, actions, claims, damages, losses and expenses, including reasonable attorneys' fees, for injury or death to person(s) or from damage or loss to property *** arising out of or in connection with the performance of the work, the furnishing of the materials or the completion of the project by Contractor [Hatfield] ***." *Motor Vehicle*, 193 Ill. App. 3d at 6.

Based on this language, the court decided that Hatfield had not agreed to indemnify GSF for GSF's own negligence.

In cases in which courts have found indemnity agreements

violated the Act, the agreement to indemnify another person for that person's own negligence has been express. See, *e.g.*, *Juretic v. USX Corp.*, 232 Ill. App. 3d 131, 596 N.E.2d 810 (1992); *St. John v. City of Naperville*, 155 Ill. App. 3d 919, 508 N.E.2d 1128 (1987); *Shaheed v. Chicago Transit Authority*, 137 Ill. App. 3d 352, 484 N.E.2d 542 (1985). The language in the agreement before us is more like that in *Motor Vehicle*.

Triggi argues, however, that the judge did not err in finding that the indemnity agreement violated the Indemnity Act because, *as applied*, the agreement was void. Triggi reasons that, in order for the Village to recover under its third-party complaint, it must first be found to have been negligent pursuant to the plaintiffs' complaint. By attempting to recover under the indemnity agreement for this finding of liability, the Village would be seeking indemnity for its own negligence. To prevent the Village from recovering for its own negligence under the indemnity agreement, Triggi argues, the judge properly found the agreement void under the Act.

In support of this argument, Triggi cites *Motor Vehicle Casualty Co. v. GSF Energy, Inc.*, 193 Ill. App. 3d 1, 549 N.E.2d 884 (1989), and *Lavelle v. Dominick's Finer Foods, Inc.*, 227 Ill. App. 3d 764, 592 N.E.2d 287 (1992). In *Motor Vehicle*, the court held that, although an indemnity agreement was facially valid, it violated the Indemnity Act in the context of the underlying Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*) claim. *Motor Vehicle*, 193 Ill. App. 3d at 6-7. In *Motor Vehicle*, Hatfield had contracted to perform work at GSF, and the contract between the parties contained the indemnity agreement we have already quoted in this opinion. One of Hatfield's employees sued GSF under the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*) for injuries he sustained at the work site. GSF filed a third-party complaint against Hatfield. Although the *Motor Vehicle* court decided that the parties' agreement did not violate the Indemnity Act on its face, it decided the agreement was void in the context of GSF's request for indemnification for the Structural Work Act claim against it. *Motor Vehicle*, 193 Ill. App. 3d at 7. The court explained that, in order to invoke the indemnity agreement, GSF would have to be found liable to the plaintiff under the Structural Work Act, which requires a finding that the defendant has "wilfully violated" the Act. To uphold the agreement in this context would be a violation of public policy.

Similarly, the court in *Lavelle* held that the following agreement was void under the Indemnity Act in the context of a Structural Work Act claim:

"[T]he Contractor shall indemnify and hold harmless the Owner

and the Architect *** from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees arising out of or resulting from the performance of the Work." *Lavelle,* 227 Ill. App. 3d at 768-69.

The agreement was contained in a contract in which the plaintiffs' employer had agreed to install a sprinkler system for Dominick's. Lavelle, the employee, sued Dominick's under the Structural Work Act for injuries he received at the jobsite, and Dominick's filed a third-party complaint against the employer. The *Lavelle* court did not decide whether the agreement was facially valid. Relying on *Motor Vehicle,* however, the court decided that Dominick's claim for indemnification violated the Indemnity Act because, in order to obtain protection under the agreement, it must first have been found liable for a Structural Work Act violation, and the Indemnity Act prevents recovery for one's own negligence. *Lavelle,* 227 Ill. App. 3d at 769-70.

■ We do not agree with the Village that the application of *Motor Vehicle* is restricted to Structural Work Act cases. The *Motor Vehicle* court pointed out that the would-be indemnitee was alleged to have "wilfully violated" the Structural Work Act. The court said:

"The underlying implication is an attempt to uphold an express agreement to reimburse GSF for liability directly attributable to its violation of the Act, *not liability imposed vicariously or strictly.* This is the type of agreement that is proscribed by the Indemnity Act. [Citations.]" (Emphasis added.) *Motor Vehicle,* 193 Ill. App. 3d at 7.

The allegations of the complaint against the Village impose liability directly attributable to its own negligence not liability imposed vicariously or strictly. The negligence pleaded against the Village is not purely derivative. The evidence relied upon by the judge to deny the Village's summary judgment in the Jandrisits complaint shows that the Village was aware of the defective work and took no steps to correct it. If that evidence is accepted, it would establish that the Village is liable to the plaintiff for its own negligence. For these reasons, we agree with the judge's determination that the indemnity agreement violated the Act.

We turn now to the Village's contention that Triggi was obligated to defend the Village in the Jandrisits complaint. The Village correctly notes that the duty to defend is broader than the duty to indemnify. *Aetna Casualty & Surety Co. v. Coronet Insurance Co.,* 44 Ill. App. 3d 744, 358 N.E.2d 914 (1976). The Village argues further, however, that the duty to defend may be determined by facts extraneous to the underlying tort complaint and that Majewski's testimony establishes liability on the part of Triggi.

■ There are a number of responses to the Village's argument. First and foremost, it is contrary to the long and consistently recognized principle that the existence of a duty to defend a complaint arising from an indemnity agreement is determined solely from the allegations of the complaint and the agreement; and the duty of an insurer is not annulled by the insurer's knowledge that the allegations of the complaint are untrue. *Thornton v. Paul*, 74 Ill. 2d 132, 161, 384 N.E.2d 335 (1978). If the duty of an insurer to defend may not be annulled by facts outside the complaint, we see no reason why the duty of an insurer to defend may be expanded by facts outside the complaint. Second, the Village's argument ignores the fact that Triggi has proffered an expert who would contradict the testimony of Majewski. Acceptance of the Village's argument would mean that in resolving the question of the duty to defend, a trial judge would be required to first determine one of the principal issues in the underlying tort complaint, namely, whether the sidewalk was defective. This is an unacceptable procedure. See *Murphy v. Urso*, 88 Ill. 2d 444, 430 N.E.2d 1079 (1981). Third, a finding that Triggi had been negligent, we repeat, would not absolve the Village from liability. The fact that Triggi negligently repaired the sidewalks does not render untrue the allegations of the complaint against the Village.

The Village also refers to *Hanlon v. Airco Industrial Gases*, 148 Ill. App. 3d 1039, 500 N.E.2d 494 (1986), in support of its argument that the courts may look beyond the allegations of the complaint in determining whether the duty to defend exists. We note first that *Hanlon* was a claim brought under strict liability. Second, and more important, it did not involve the duty to defend. Third, the language of *Hanlon* cited by the Village is not supported by any citation. Last, *Motor Vehicle* is clear authority in line with the established principle of law that the duty to defend is to be determined by the allegations of the underlying tort complaint.

For these reasons, we hold the judge correctly ruled that Triggi was not obliged to defend the Village in the underlying tort complaint.

The agreement between the Village and Triggi also provided as follows:

> "In addition Certificates of Insurance adding the Owner, the Village of River Grove *** as Additional Insureds on the Contractor's General Public Liability and Property Damage Policy and Protective Liability Insurance Policy shall be submitted to and approved by the Engineer, said Certificate stating the coverage is for this specific project and having a 30 day advance notice cancellation clause."

In count II the Village also maintained that Triggi had breached this part of the agreement by failing to provide the required insurance. The order granting summary judgment on its face is a final and appealable order under Rule 301. Consequently, we must presume that the judge ruled on all matters that were before him. Neither in the Village's motion for summary judgment nor in Triggi's motion for summary judgment is the question of insurance procurement expressly called to the attention of the judge. Triggi's motion for summary judgment did refer to a previous motion to dismiss filed by Triggi which did argue that the insurance procurement provision was also void for the same reasons that the indemnity agreement was void. The motion submitted by the Village was not for partial summary judgment as the Village now seems to suggest in its reply brief.

In its opening brief in this court, the Village asks that the case be remanded because the issue of insurance procurement had not been raised or passed upon by the trial judge. In its reply brief, the Village asks for an outright reversal and, alternatively, that the case be remanded because a question of fact exists on whether Triggi did provide the required insurance.

Triggi raises three grounds for upholding summary judgment on the insurance procurement issue: (1) waiver; (2) the agreement to procure insurance was void for the same reason that the indemnity agreement was void; and (3) Triggi did procure the insurance as required by the contract. In its reply brief, the Village argues that the facts do not establish that Triggi did provide the required insurance; that there was no waiver; and that the agreement was not void. The question of whether Triggi had in fact complied with the contract was never argued in the trial court.

■ We have previously expressed disapproval of the practice of presenting issues to a trial judge in an oblique manner. We said that a "party should be required to raise an issue forthrightly and directly." *Home Insurance Co. v. Liberty Mutual Insurance Co.*, 266 Ill. App. 3d 1049, 1053, 641 N.E.2d 855 (1994). Clearly, the factual question *now* raised by the parties was not raised before the judge.

■ Under the confusing state of the record, we are unwilling to find that the issue has been waived. In order to preserve the appealability of this order, however, we must construe the judge's final ruling as one which held either that no question of fact existed or that the agreement to procure insurance was void. *If* he determined that the agreement to procure insurance was void, we must disagree. The case relied upon by Triggi, *Shaheed v. Chicago Transit Authority*, 137 Ill. App. 3d 352, 484 N.E.2d 542 (1985), is not in point. In *Shaheed* a

subcontractor had agreed to indemnify a contractor from its own negligence. The subcontractor had also agreed to maintain insurance "insuring all the Subcontractor[']s indemnity obligations under [the] agreement." *Shaheed*, 137 Ill. App. 3d at 363. The appellate court concluded that this agreement was unenforceable because it was an agreement to obtain insurance against a void agreement to indemnify.

By contrast, Triggi did not agree to insure its indemnity obligations under the contract. Instead, it agreed to obtain "Certificates of Insurance adding the Owner *** as [an] Additional Insured[ ] on the Contractor's General Public Liability and Property Damage Policy and Protective Liability Insurance Policy." Although a party may not insure its obligations under a void indemnity agreement, "provisions which require the indemnitor to provide liability insurance for the indemnitee, making the indemnitee an insured under the policy, are valid." *GTE North, Inc. v. Henkels & McCoy, Inc.*, 245 Ill. App. 3d 322, 328, 612 N.E.2d 1375 (1993); see also *Jokich v. Union Oil Co.*, 214 Ill. App. 3d 906, 574 N.E.2d 214 (1991). The agreement between Triggi and the Village contains the type of provision that was contained in *GTE North* and *Jokich*.

We must agree also with the Village that the state of the record is such that we cannot determine whether Triggi did, in fact, provide the insurance required by the contract. The Village maintains that Triggi supplied only one of the insurance policies required under the contract. Triggi has not responded to this contention to our satisfaction. Nor can we tell whether the Village is estopped to raise the question of insurance procurement.

For these reasons, we must vacate the summary judgment and remand the case for further proceedings on the single issue of whether Triggi is liable under count II for failure to provide the insurance as required under the agreement.

Judgment vacated and remanded.

ZWICK, P.J., and RAKOWSKI, J., concur.