ROSE KAVALES, as Special Adm'r for the Estate of Diana Drost, Deceased, Plaintiff-Appellant, v. THE CITY OF BERWYN et al., Defendants-Appellees.

First District (1st Division)   No. 1—97—4181

Opinion filed May 24, 1999.

538

Steinberg, Polacek & Goodman, of Chicago (Bradley D. Steinberg, of counsel), for appellant.

Cuda & LaPonte, Ltd., of Chicago (Carrie M. Foris, of counsel), for appellee City of Berwyn.

Sudekum, Rosenberg & Cassidy, Chartered, of Chicago (John C. Cassidy, of counsel), for appellee Northern Illinois Gas Company.

JUSTICE GALLAGHER delivered the opinion of the court:

This action was brought to recover damages for personal injuries allegedly sustained by the plaintiff's decedent, Diana Drost, when she fell after stepping into a depressed area of the pavement, as she was crossing a public alley in the City of Berwyn. Plaintiff's second amended complaint alleged negligence on the part of defendants, the City of Berwyn (Berwyn) and Northern Illinois Gas Company (Northern). The complaint alleged that Berwyn failed to properly maintain the crosswalk area where plaintiff's decedent fell. As to Northern, the complaint alleged it failed to properly repair and restore the crosswalk area, after having undertaken excavation and pipe-laying activities in the area. On October 14, 1997, the trial court granted summary judgment in favor of both defendants. Plaintiff now appeals.

■ In granting the defendants' motions for summary judgment, the trial court determined, for different reasons, that neither defendant owed a duty toward plaintiff's decedent. Our review of the trial court's grant of summary judgment is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 615 N.E.2d 736 (1993). Our analysis of whether either defendant owed a duty to plaintiff's decedent necessarily takes into account "the foreseeability of the plaintiff's injury, the likelihood of the occurrence, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Doe v. McKay*, 183 Ill. 2d 272, 278, 700 N.E.2d 1018, 1022 (1998).

The undisputed facts relevant to this appeal include the following: On February 10, 1995, plaintiff's decedent, Diana Drost, and a companion were walking southbound on the west sidewalk in the 3200 block of South Oak Park Avenue in the City of Berwyn. There was an alley which ran perpendicular to and intersected with the sidewalk and Oak Park Avenue. At the mouth of the alley, the sidewalk to the north of the alley formed a triangular-shaped concrete ramp that led down to the alley surface. The sidewalk resumed on the south side of the alley, but had a curb instead of the ramp that was on the other side.

When plaintiff's decedent approached this junction, she crossed the alley and while still within the lateral lines of the sidewalk sections to the north and south of the alley stepped into a depressed, uneven, and cracked portion of the pavement, sustaining serious bodily injury. Her companion identified the place of the fall as being a depressed area, midway between the two sides of the alley, within the

extension of the sidewalk between the outermost portion of the curb and building line.

## CITY OF BERWYN

■ We first address the issue of whether Berwyn owed a duty toward plaintiff's decedent. A municipality's duty to maintain its property is governed by section 3—102(a) of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, which provides, in pertinent part, as follows:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3—102(a) (West 1996).

That the location of plaintiff's decedent's fall was on property owned by Berwyn is not in dispute. Rather, it is the characterization of that property upon which the parties disagree. Berwyn argued, and the trial court agreed, that the property was an alley which Berwyn had no duty to maintain in a reasonably safe condition for use by pedestrians, because while they may be permitted users, they are not intended users, of alleys. Plaintiff contends that the location of the fall was on property which can be described as a crosswalk, as that term is defined by statute, and Berwyn did have a duty to maintain its crosswalks in a reasonably safe condition for pedestrian use, because pedestrians are permitted and intended users of crosswalks. Thus, the narrow issue presented here is whether plaintiff's decedent was a permitted and intended user of that portion of the public alley which intersected with a public sidewalk upon which plaintiff's decedent was traversing.

■ This court has stated that "an alley is a roadway designed for vehicular traffic, and the duty imposed upon a municipality under section 3—102(a) is the same as that imposed for a street." *Khalil v. City of Chicago*, 283 Ill. App. 3d 161, 163-64, 669 N.E.2d 1189, 1191 (1996). While both parties have acknowledged this statement, they dispute its relevance to the facts of this case. Berwyn contended, and apparently the trial court agreed, that *Khalil* was dispositive because pedestrians are not intended users of streets or alleys, and since plaintiff's decedent's fall was in an alley, Berwyn had no duty to maintain the al-

ley in a safe condition for the use of pedestrians. This conclusion, however, fails to address the threshold issue of whether plaintiff's decedent's fall was in an alley or in a crosswalk. Moreover, because *Khalil* did not address this issue, we find the case distinguishable.

In *Khalil*, it was undisputed that the plaintiff's decedent was walking *through* an alley and *down the middle* of the alley. *Khalil*, 283 Ill. App. 3d at 162, 669 N.E.2d at 1190. In the present case, plaintiff's decedent was walking *across* an alley. Since the distinction between the crosswalk area and the rest of the street has been recognized in cases dealing with pedestrian use of streets, it should also be addressed in cases dealing with pedestrian use of alleys.

■ "In considering the scope of the duty delineated by this provision, Illinois courts have developed the general principle that a municipality owes no duty of care to a pedestrian who walks in or crosses a public roadway outside a crosswalk. [Citations.]" *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208, 608 N.E.2d 882, 885 (1993). A municipality *does* owe a duty of reasonable care to pedestrians who walk in a street *inside of or within the boundaries of crosswalks*. See, *e.g., Ramirez v. City of Chicago*, 212 Ill. App. 3d 751, 753, 571 N.E.2d 822, 823 (1991) (municipality has a duty to reasonably maintain its crosswalks for pedestrians). *A fortiori*, Berwyn here did owe a duty to plaintiff's decedent if she was walking inside or within the boundary of a crosswalk.

The majority of cases have involved plaintiffs who crossed streets midblock, outside of a crosswalk, whose use of the street was not considered to be permitted and intended because they crossed or walked in the street *where there was no crosswalk* and the *only* use of the street that was intended was vehicular use. See, *e.g., Sisk v. Williamson County*, 167 Ill. 2d 343, 657 N.E.2d 903 (1995) (no duty owed to pedestrian who fell from a bridge which was part of a country roadway); *Vaughn v. City of West Frankfurt*, 166 Ill. 2d 155, 158, 651 N.E.2d 1115 (1995) (no duty owed to pedestrian who stepped into hole while crossing in middle of street); *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 424, 592 N.E.2d 1098 (1992) (no duty owed to pedestrian crossing highway where no crosswalk while en route to parked car); *Khalil*, 283 Ill. App. 3d at 164, 669 N.E.2d at 1191 (no duty to pedestrian using alley as if it were a sidewalk by walking down middle of alley). These cases are distinguishable and none addressed the precise issue that we face, whether the junction of an alley with a sidewalk can accurately be described as a crosswalk intended for pedestrians. Apart from cases that involved factual disputes regarding the true location of a plaintiff's injury, that is, whether the exact location of a fall occurred while a plaintiff was *outside of* or *within* the boundaries of a

crosswalk, our research has not disclosed any case that involved a dispute as to whether the area of the fall was properly characterized as a crosswalk. Therefore, the resolution of this issue necessarily requires that we first address the definition of a crosswalk.

■ Section 1—113 of the Illinois Vehicle Code (the Code) defines crosswalk as follows:

"§ 1—113. Crosswalk. (a) That part of a roadway *at an intersection* included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway, and in the absence of a sidewalk on one side of the highway, that part of the highway included within the extension of the lateral line of the existing sidewalk to the side of the highway without the sidewalk, with such extension forming a right angle to the centerline of the highway;

(b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface placed in accordance with the provisions in the Manual adopted by the Department of Transportation as authorized in Section 11—301." (Emphasis added.) 625 ILCS 5/1—113 (West 1994).

Contrary to Berwyn's assertion, a piece of property may constitute a "crosswalk" if it meets the requirements of either, not both, section (a) or section (b). Accord *Panella v. Weil-McLain Co.*, 329 Ill. App. 240, 67 N.E.2d 699 (1946) (abstract of op.) (A crosswalk need not be painted or marked on the surface of a street in order to constitute a statutory "crosswalk," and the extensions of sidewalk lines over streets at any intersection are regarded as crosswalks). Plaintiff contends that the location of plaintiff's decedent's fall was within a crosswalk as that term is defined in section (a) of this provision of the Illinois Vehicle Code. Plaintiff's contention presumes that the area in question constitutes an intersection. The statutory definition of an intersection, however, clearly excludes the subject area in the present case. Section 1—132 of the Illinois Vehicle Code states, in pertinent part, as follows:

"§ 1—132. Intersection. The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles or the area within which vehicles traveling upon different roadways joining at any other angle may come in conflict.

***

(c) *The junction of an alley with a street or highway does not constitute an intersection.*" (Emphasis added.) 625 ILCS 5/1—132 (West 1994).

Thus, because it is undisputed that the location here was the junction of an alley with a street, the plaintiff's decedent was not within a statutory crosswalk. *Cf. Woolsey v. Rupel*, 13 Ill. App. 2d 48, 52, 140 N.E.2d 855 (1957) (explaining that accident did not occur in an unmarked crosswalk "at an intersection" where accident occurred on a private lane, and private lane did not qualify as an intersection under applicable statutes); *Cihal v. Carver*, 334 Ill. App. 234, 79 N.E.2d 82 (1948) (explaining that, under the applicable statute, "crosswalks" referred to crosswalks at highway intersections and excluded crosswalks at junction of a highway and a private road.)

Nevertheless, although plaintiff's decedent technically may not have been within a statutorily defined crosswalk, that does not end our inquiry as to whether she was an intended user of the particular piece of property in question. " 'Whether a particular use of property was permitted and intended is determined by looking to the nature of the property itself.' " *Boub v. Township of Wayne*, 183 Ill. 2d 520, 525 (1998), quoting *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 162-63, 651 N.E.2d 1115 (1995); *Wojdyla*, 148 Ill. 2d at 426. Therefore, in order to discern whether plaintiff's decedent was an "intended" user of the property in question, we must look to the "nature of the property itself." The property here was at the junction of a public alley and a street, more specifically, where the sidewalk converged with the alley, within the lateral lines of the sidewalk to the north and south of the alley. Although not raised by either party, such an area has been addressed by another provision of the Illinois Vehicle Code.

■ Section 11—1205 of the Code reads as follows:

"The driver of a vehicle emerging from an alley, building, private road or driveway within an urban area shall stop such vehicle immediately prior to driving *into the sidewalk area extending across such alley*, building entrance, road or driveway, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon, and *shall yield the right-of-way to any pedestrian as may be necessary* to avoid collision, and upon entering the roadway shall yield the right-of-way to all vehicles approaching on such roadway." (Emphasis added.) 625 ILCS 5/11—1205 (West 1994).

Thus, the legislature has made clear that pedestrians are intended users of such an area.

The present case is distinguishable from *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 651 N.E.2d 1115 (1995), in which the plaintiff relied upon statutory sections of the Illinois Vehicle Code (625 ILCS 5/11—1003, 11—1007(b) (West 1996)) which merely permitted pedestrians to use property primarily intended for vehicular use.

*Vaughn v. City of West Frankfort,* 166 Ill. 2d 155, 651 N.E.2d 1115 (1995). Looking to the property itself, the court noted that "[s]treets are paved, marked and regulated by traffic signs for use by vehicles." *Vaughn,* 166 Ill. 2d at 160, 651 N.E.2d at 1118. Therefore, despite the permissive uses of streets afforded pedestrians by these statutory sections, the *Vaughn* court explained that "a plaintiff must be not only a legally permitted user of the public property, but *also an intended user* before a duty of reasonable care will be imposed upon the municipality." (Emphasis added.) *Vaughn,* 166 Ill. 2d at 160, 651 N.E.2d at 1118. Pedestrians are not intended users of streets because streets are for vehicular traffic.

By contrast, section 11—1205 states what a driver of a vehicle "shall" do under circumstances where he is using the sidewalk area extending across an alley. Thus, in the case at bar, looking to the property itself, it is clearly intended for use by pedestrians. While the intersection of the alley and the street here is technically not a statutory intersection, it clearly is the type of intersection at which pedestrians are intended users by custom. See *Vaughn,* 166 Ill. 2d at 160-61, 651 N.E.2d at 1118. Thus, while plaintiff's decedent may not have been in a "crosswalk" as that word is defined by statute, neither was she in an "alley." Rather, she was in the "sidewalk area," which is intended for pedestrians. In addition to sidewalks and crosswalks, pedestrians are intended users of the area where a sidewalk intersects an alley.

■ In view of the foregoing, we need not address further plaintiff's argument that Berwyn, by aligning the sidewalk to the north and south of the location of the fall and installing a pedestrian ramp, manifested an intent that pedestrians use the specific area in question. We conclude that, as a matter of law, pedestrians are permitted and intended users of the property that consists of the sidewalk area that extends across any alley in an urban area.

## NORTHERN ILLINOIS GAS COMPANY

We now address whether the trial court's grant of summary judgment in Northern's favor was correct. Northern's motion for summary judgment was supported by the affidavit of its employee Raymond Morrison, director of risk management. The thrust of Mr. Morrison's affidavit testimony was that Northern owed no duty toward plaintiff. On appeal, Northern's contention that it is entitled to summary judgment is twofold: that it owed no duty toward plaintiff's decedent and, even if it did, plaintiff has offered no evidence to contradict Northern's evidence that it repaired the area where it worked in a safe and proper manner. We will consider these arguments separately.

## Northern's Duty Toward Plaintiff's Decedent

■ Plaintiff contends that Northern owed a duty toward plaintiff's decedent pursuant to section 9—113.01 of the Illinois Highway Code, which provides in pertinent part:

> "Except when otherwise provided for by contract, permit or ordinance, a unit of local government having jurisdiction over streets or roads may repair damage to any such streets or roads caused by a public or private utility and bill the utility for the cost thereof if the utility fails to complete such repairs within 30 days after receipt of written notice from the unit of local government that such repairs must be made. Primary responsibility for such repairs shall remain with the utility." 605 ILCS 5/9—113.01 (West 1996).

Pursuant to this statute, Northern was required to repave any surface areas that may have been damaged by its work. Plaintiff contends that Northern breached its duty toward plaintiff's decedent in that it failed to properly repair and restore the area where plaintiff's decedent fell. Northern argues that the statute does not create a duty toward plaintiff's decedent or create a private cause of action in plaintiff, and instead argues that only the local municipality would have a remedy under the statute where a utility fails to repair the damage. We need not determine the extent of Northern's duty under the statute, since Northern owed a common law duty toward plaintiff's decedent based upon its voluntary undertaking.

■ It is undisputed that, in 1982, Northern installed a gas main in the area near plaintiff's decedent's fall. Our review of the record indicates that it can reasonably be presumed that Northern fulfilled its responsibility under the statute and repaired whatever damage it may have caused by repaving the area where plaintiff's decedent fell. "Where there is no duty to repair, common law liability can only arise from a negligent performance of a voluntary undertaking. [Citation.]" *Trotter v. Chicago Housing Authority*, 163 Ill. App. 3d 398, 402, 516 N.E.2d 684, 687 (1987). Assuming *arguendo* that Northern's duty to repair the damage it caused did not extend to third parties, but only to the municipality, a duty toward third parties was created when it did, in fact, repair the area.

■ Where one gratuitously undertakes to render services to another, there is a duty to perform those services with due care or with such competence and skill as one possesses. This principle, known as the voluntary undertaking doctrine, was first discussed by the Illinois Supreme Court in *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E.2d 769 (1964), implicitly adopted by the Illinois Supreme Court in *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 399 N.E.2d 596

546

(1979), and has now been unequivocally accepted by the Illinois Supreme Court. See, *e.g., Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 605 N.E.2d 557 (1992). Absent an applicable statute of repose, the passage of time does not extinguish this initial duty. The fact that an alleged injury occurs many years later as a result of an alleged breach of this duty, while it may ultimately present proof problems with respect to elements of the plaintiff's cause of action, does not change the fact of the existence of the duty. Northern not only had a responsibility to repair the damage it caused when it excavated the property, but actually undertook to repair the property.

■ Moreover, the fact that Northern did not own, control or have a duty to maintain the property does not relieve Northern of its duty to perform the original repairs with due care. See, *e.g., Jandrisits v. Village of River Grove*, 283 Ill. App. 3d 152, 669 N.E.2d 1166 (1996) (noting that, in the underlying negligence lawsuit involving a pedestrian slip and fall on a sidewalk, any finding that the contractor negligently repaired the sidewalk would not render untrue the allegations of the negligence against the municipality or absolve the municipality from liability). Likewise, the allegations of negligence against Berwyn, even if proven, do not eliminate the duty owed by Northern or necessarily render untrue the separate allegations of a breach of that duty on the part of Northern for its acts in 1982. As a matter of law, Northern owed a duty toward pedestrians who were intended and permitted users of the area that it repaired in 1982, including plaintiff's decedent.

Northern contends that the location of the plaintiff's decedent's fall was different from the area that it repaired. Northern argues that plaintiff's decedent fell midway between the two sides of the alley, while the gas main that it installed was on the northern portion of the alley. In his deposition, however, Mr. Morrison testified that the relative uniform condition of the alley indicated that all of the concrete had been poured at the same time and that it appeared to him that the entirety of the alley had been repaved by Northern when it installed the gas main in 1982. Thus, there is a reasonable inference that Northern had repaved the area that was the location of plaintiff's decedent's fall. Northern's contentions do not relieve it of its duty, but merely create a genuine issue of material fact as to whether the depressed area in the pavement, allegedly the proximate cause of plaintiff's decedent's injuries, was the result of Northern's activities. While plaintiff ultimately may not be able to prove her case, unless she successfully establishes the elements of her cause of action, including a breach of duty on the part of Northern, that is not a court's concern at the summary judgment phase. A court's role at the sum-

mary judgment phase is to determine whether any triable issues of fact exist, not to resolve those issues. *Cameron v. Owens-Corning Fiberglas Corp.*, 296 Ill. App. 3d 978, 989, 695 N.E.2d 572, 579 (1998) (Cook, J., specially concurring).

## Breach of Duty on the Part of Northern

■ In order for a plaintiff to recover damages based on negligence, in addition to proving the existence of a duty on the part of the defendant, a plaintiff must also establish a breach of the duty and an injury to the plaintiff proximately caused by the breach. *Thompson v. County of Cook*, 154 Ill. 2d 374, 382, 609 N.E.2d 290, 293 (1993). Although the existence of a duty is determined as a matter of law, whether a duty has been breached and whether the breach proximately caused an injury are generally factual matters. *Thompson*, 154 Ill. 2d at 382, 609 N.E.2d at 293. Northern contends, however, that plaintiff has failed to offer any evidence showing that the area where Northern performed work in 1982 was inadequately repaired which would contradict the evidence provided by Northern that its work in 1982 was done in a safe and proper manner and did not cause plaintiff's injury. Therefore, Northern contends it is entitled to summary judgment. We disagree.

■ It is well established that, although a plaintiff does not need to prove his or her case at the summary judgment stage, the plaintiff must come forward with enough evidence to create a genuine issue of material fact. See, *e.g., City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 325, 696 N.E.2d 804, 810-11 (1998). This obligation does not arise, however, unless and until the moving party has presented *evidence* of its own. See, *e.g., Groce v. South Chicago Community Hospital*, 282 Ill. App. 3d 1004, 669 N.E.2d 596 (1996) (where no competent evidence found in record to support assertion that defendant actually took those actions that plaintiff's expert had conceded would have complied with applicable standard of care); *Levitt v. Hammonds*, 256 Ill. App. 3d 62, 66, 628 N.E.2d 280, 283-84 (1993) (where defendant failed to come forward with any evidence that its vehicle's allegedly faulty brakes were not defective). This principle, although not always expressly stated, has been implicitly acknowledged in summary judgment cases. See, *e.g., Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 633 N.E.2d 627 (1994) (opponent cannot rely simply on complaint to raise issue of fact when movant has supplied *facts* that, if not contradicted, entitle movant to judgment as a matter of law); *Winston & Strawn v. Nosal*, 279 Ill. App. 3d 231, 236, 664 N.E.2d 239, 242 (1996) (party opposing a motion for summary judgment need not conclusively disprove the *facts* presented by the movant, but must merely show that a contrary version

of events exists); *Ocasek v. City of Chicago*, 275 Ill. App. 3d 628, 632, 656 N.E.2d 44, 47 (1995) (where defendant has produced sufficient *evidence* that would entitle it to judgment as a matter of law, burden of proof shifts to plaintiff); *Hill v. Chicago Housing Authority*, 233 Ill. App. 3d 923, 930, 599 N.E.2d 1118, 1123 (1992) (where party moving for summary judgment met its burden of presenting *facts* that, if uncontradicted, would entitle it to a judgment as a matter of law.) Northern has not presented sufficient facts or evidence that would entitle it to judgment as a matter of law.

■ Mr. Morrison's affidavit testimony merely addressed the issue of whether Northern owed a duty toward plaintiff's decedent. We find nothing in Mr. Morrison's affidavit that would support Northern's contention that it did not breach a duty. Thus, any facts or evidence in support of this argument can only be based upon Mr. Morrison's deposition testimony. Depositions may be used for any purpose for which an affidavit may be used in a summary judgment proceeding; however, such submitted depositions must comply with Illinois Supreme Court Rule 191(a), which sets out the requirements for such affidavits. *Groce*, 282 Ill. App. 3d at 1009, 669 N.E.2d at 600. Illinois Supreme Court Rule 191(a) directs that these affidavits "shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 134 Ill. 2d R. 191(a).

■ Our review of Mr. Morrison's deposition testimony regarding Northern's actions in 1982 reveals that the testimony had no factual underpinnings and failed to meet the requirements of Supreme Court Rule 191. Mr. Morrison was not employed by Northern in 1982, nor was he a witness to any of Northern's actions with respect to the work done in 1982. He further acknowledged that he was unable to locate any records regarding the work that was performed, with the exception of the record indicating that the gas main was installed in the area by Northern in 1982. Thus, Mr. Morrison had no personal knowledge regarding Northern's conduct in repairing the damage it caused during the 1982 excavation.

Mr. Morrison also offered testimony, however, that when Northern installed the underground gas main in 1982, the area damaged by Northern would have been repaired in a safe and consistent manner in accordance with the common practice of Northern. It is this "evidence" that Northern asserts must be contradicted by plaintiff to create a genuine issue of material fact as to Northern's alleged negligence. Northern contends that this testimony regarding Northern's custom and practice was sufficient to demonstrate that Northern's work in 1982 was proper and did not cause plaintiff's decedent's injuries.

While not expressly argued by Northern, the testimony offered by Mr. Morrison, since it is not based upon personal knowledge, can only be categorized as evidence of an organization's routine practice, analogous in some respects to the more commonly discussed habit evidence of an individual. Habit evidence of an individual, like evidence of an organization's routine, is admissible to prove that the conduct in question was in conformity with such habit or routine practice. *Collins v. Roseland Community Hospital*, 219 Ill. App. 3d 766, 773, 579 N.E.2d 1105, 1109 (1991). This court discussed such evidence in *Brennan v. Wisconsin Central Ltd.*, 227 Ill. App. 3d 1070, 591 N.E.2d 494 (1992), where it explained:

"Evidence of an organization's routine practice may be established by opinion testimony of a person with personal knowledge or by the introduction of specific instances of conduct sufficient in number to support a finding of routine practice. However, this evidence must be sufficiently detailed and specific, and the situations involved must be similar enough to give rise to a reliable inference. [Citation.]" *Brennan*, 227 Ill. App. 3d at 1085, 591 N.E.2d at 505.

Evidence of the habit of an individual or the routine practice of an organization describes an act that is a regular response to a repeated specific situation so that the act becomes semi-automatic and of virtually invariable regularity. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 406.1 (6th ed. 1994). It has been explained that "[t]he types of conduct qualifying for admission as a routine business practice are ministerial [not discretionary] acts: mailing, filing, sending notice, and the like." *Knecht v. Radiac Abrasives, Inc.*, 219 Ill. App. 3d 979, 988, 579 N.E.2d 1248, 1254 (1991).

Mr. Morrison's testimony that Northern repaired the damage to the area in a safe and proper manner was a lay witness' opinion. The opinion went to the ultimate issue of whether Northern was negligent. "The closer the subject of the [lay witness'] opinion approaches critical issues, the more likely it is that the court will require more concrete details from the witness, either alone or prior to the offering of an opinion." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 701.1, at 533 (6th ed. 1994); accord *Knecht v. Radiac Abrasives, Inc.*, 219 Ill. App. 3d 979, 984-86, 579 N.E.2d 1248, 1251-52 (1991).

In accordance with these principles, it is clear that the substance of Mr. Morrison's testimony on the ultimate issue of whether Northern was negligent did not constitute proper evidence of habit or routine practice of a business organization. The testimony was not sufficiently detailed or specific enough to establish evidence of a routine business practice. Even if the repairing of damage caused by an excavation to install an underground gas main is the type of conduct that can be

categorized as a ministerial act, that Northern performed this activity is not in dispute. The issue of whether the activity was performed negligently is in dispute. Without more specific information concerning the basis for his opinion, Mr. Morrison's testimony that Northern was not negligent was mere conjecture and speculative at best. His assertion that Northern would have repaired the area in a proper and safe manner was not based on provable facts—it was a conclusion. Northern has failed to present any evidence that it repaired the area in question in a safe and proper manner.

Accordingly, for all of the foregoing reasons, we reverse the trial court's grant of summary judgment as to both defendants, Berwyn and Northern, and we remand this matter to the circuit court for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.