W.E. O'NEIL CONSTRUCTION COMPANY *et al.*, Plaintiffs-Appellees, v. GENERAL CASUALTY COMPANY OF ILLINOIS, Defendant-Appellant (St. Paul Fire and Marine Insurance Company, Defendant).

First District (3rd Division)   No. 1—99—1502

Opinion filed March 30, 2001.

552

Judge & James, Ltd., of Park Ridge (Jay S. Judge and Michael J. Cronin, of counsel), for appellant.

Morse & Bolduc, of Chicago (Peter C. Morse and David J. Roe, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Defendant, General Casualty Company of Illinois, appeals from the entry of summary judgment in favor of plaintiff Assurance Company of America, an excess insurer of plaintiff W.E. O'Neil Construction Company, for the attorney fees and costs that Assurance paid for the defense of O'Neil in a personal injury lawsuit. The lawsuit arose out of a construction project in which O'Neil was the general contractor and Blommaert Brothers Masonry, Inc., was a subcontractor.

General Casualty argues on appeal that it was not liable for O'Neil's defense costs because the insurance was provided to cover a void indemnity agreement. General Casualty argues in the alternative that, if it is liable for O'Neil's defense costs, the trial court erred in calculating the amount reimbursable to Assurance by General Casualty and erred in awarding prejudgment interest. We affirm the finding of liability but reverse and remand on the issue of damages, on the basis that Assurance was improperly awarded reimbursement for the attorney fees incurred in seeking payment of the costs of defending the personal injury lawsuit from other insurers of O'Neil.

## FACTS

O'Neil was the general contractor and Blommaert was a subcon-

tractor to O'Neil on a construction project in Woodridge, Illinois. General Casualty issued a commercial general liability insurance policy to Blommaert. O'Neil was listed as an additional insured on the policy. Assurance was the excess insurer of O'Neil.

O'Neil was named as one of the defendants in a lawsuit entitled Posey v. W.E. O'Neil Construction Co., No. 92—L—8460 (Cir. Ct. Cook Co.) (*Posey*), in which damages were sought for bodily injuries suffered in an incident on July 2, 1992, at the Woodridge project because of alleged violations of the Structural Work Act (740 ILCS 150/0.01 (West 1992)). O'Neil tendered its defense to General Casualty, which paid only a portion of the defense costs.

O'Neil and Assurance brought a declaratory judgment action. O'Neil sought a declaration that General Casualty had breached its duty to defend it in the *Posey* lawsuit. Assurance alleged that it issued a commercial general liability insurance policy to O'Neil that was excess over any other insurance. Assurance further alleged that for certain coverages it had no duty to defend when the insurance was excess but that it would defend if no other insurer defended. Assurance sought to recover the defense costs it incurred on behalf of O'Neil in the *Posey* lawsuit on the basis that General Casualty's insurance policy was primary. Assurance also sought prejudgment interest.

Blommaert's subcontract with O'Neil includes the following provisions concerning indemnification and insurance:

> "INDEMNIFICATION. ARTICLE XX. To the fullest extent permitted by law, the Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with *his execution of the Work*; and if any claims for such damage or injury (including death resulting therefrom) be made or asserted, the Subcontractor agrees to indemnify and save harmless W.E. O'Neil Construction Company, O'Neil Industries, Inc., Owner and others required in the contract documents, their officers, agents, servants and employees (hereafter referred to collectively as 'Indemnities') from and against any and all such claims, and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that Indemnities may directly or indirectly sustain, suffer or incur as result thereof and the Subcontractor, upon demand, agrees to and does hereby assume, on behalf of Indemnities, the defense of any action at law or in equity which may be brought against Indemnities upon or by reason of such claims and to pay on behalf of Indemnities upon its demand, the amount of

any judgement that may be entered against Indemnities in any such action.

* * *

INSURANCE. ARTICLE XXI. Subcontractor shall obtain and submit to the General Contractor, before any work is performed under this contract, certificates from the Subcontractor's insurance carriers indicating coverage with limits of liability as set forth in the Principal Contract

* * *

B. *Comprehensive general liability to cover the indemnity agreement in ARTICLE XX,* although the existence of insurance shall not be construed as limiting the liability of the Subcontractor under this contract. Limits of liability shall not be less than $1,000,000 combined single limits each occurrence for bodily injury and property damage liability. *The insurance shall include blanket (broad form) contractual liability coverage.* *** *Comprehensive general liability insurance shall name W.E. O'Neil Construction Company* and O'Neil Industries, Inc. *as additional insured* and must provide Premises-Operations, Elevators, Independent Contractors, Broad Form Property Damage, Contractual Liability, Products & Completed Operations coverages *** and must be endorsed as Primary/Non-Contributory to any insurance of the additional insureds.

* * *

*Subcontractor's insurance certificate shall indicate that coverage is afforded for the Indemnification Clause in ARTICLE XX* and as required in the Principal Contract." (Emphasis added.)

Assurance filed a motion for summary judgment seeking findings that General Casualty had a primary duty to defend O'Neil with respect to the *Posey* lawsuit, that the Assurance policy was excess to the General Casualty policy, and that General Casualty had to reimburse Assurance for all reasonable expenses and costs incurred in defending O'Neil in the *Posey* lawsuit.

General Casualty argued in response, in part, that the provision requiring insurance to cover the indemnity provision in the Blommaert subcontract was void.

The trial court entered summary judgment in favor of Assurance on the issue of liability.

Assurance filed a motion for summary judgment on the issue of damages. Assurance sought a total award of $583,763.35, including 5% prejudgment interest, as of July 1, 1998, for the attorney fees and costs it had paid for the defense of O'Neil.

General Casualty responded in part that it had paid to Assurance over $50,000 and that it owed no further payment because it had agreed with Assurance to pay only 50% of O'Neil's defense costs while

another insurer paid the other 50%. General Casualty also contended that about $40,000 of the fees sought to be reimbursed by Assurance was for insurance coverage work and not for actual defense work. Assurance had conceded that General Casualty was not obligated to pay the fees for Assurance's "direct advocacy against General Casualty," which Assurance claimed totaled only $14,720.

Assurance's second motion was granted, and judgment was entered in its favor against General Casualty in the amount of $581,926. There were no findings as to which of the fees were reimbursable. The court found that, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), there was no just reason to delay enforcement or appeal.

General Casualty appealed.

## ANALYSIS

General Casualty first argues that the trial court erred in entering summary judgment on liability in Assurance's favor. General Casualty contends that the insurance provision of the Blommaert subcontract and the subcontract's indemnification provision were void under the Construction Contract Indemnification for Negligence Act (Act) (740 ILCS 35/1 (West 1998)).

■ A motion for summary judgment is to be granted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1998).

Summary judgment is a drastic means of disposing of litigation, and so the right of the moving party to obtain summary judgment must be clear and free of doubt. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627 (1994). Where doubt exists as to the right of summary judgment, the wiser judicial policy is to permit resolution of the dispute by a trial. *Jackson*, 158 Ill. 2d at 249.

The reviewing court's function is to determine *de novo* whether the entry of summary judgment was correct as a matter of law. *Cates v. Cates*, 156 Ill. 2d 76, 78, 619 N.E.2d 715 (1993).

■ Section 1 of the Act renders void those agreements in construction contracts that indemnify another person from that person's own negligence:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly enforceable." 740 ILCS 35/1 (West 1998).

The purpose of section 1 is to protect industry workers and the public from attempts to avoid the consequences of liability through the use of such indemnity agreements and to ensure motivation for accident prevention measures. *Davis v. Commonwealth Edison Co.*, 61 Ill. 2d 494, 499, 336 N.E.2d 881 (1975).

■ The indemnity provision in the Blommaert subcontract limits the subcontractor's responsibility to claims "caused by, resulting from, arising out of or occurring in connection with *his execution of the Work*." (Emphasis added.) "His" refers to Blommaert the subcontractor, and therefore the indemnity provision is clearly restricted to claims based on the subcontractor's conduct and not the general contractor's conduct.

Comparable language in an indemnity provision was found not void in *Lehman v. IBP, Inc.*, 265 Ill. App. 3d 117, 121, 639 N.E.2d 152 (1994): " 'arising out of *the work to be performed by Contractor* hereunder and resulting from the intentional and/or negligent acts or omission of Contractor, its employees and agents.' " (Emphasis added.) Similarly, in *Jandrisits v. Village of River Grove*, 283 Ill. App. 3d 152, 154, 669 N.E.2d 1166 (1996), the court held that the following language was not void on its face: " 'caused or resulting or claimed to be caused or resulting from the *work or services of the Contractor or those for whom he is responsible*.' " (Emphasis added.)

In contrast, the pertinent language in indemnity provisions that have been found void include:

(1) " 'caused by, resulting from, arising out of or occurring in connection with the execution of *the* Work \*\*\* whether or not \*\*\* claims are based upon [the general contractor's] alleged active or passive negligence.' " (Emphasis added.) *Tanns v. Ben A. Borenstein & Co.*, 293 Ill. App. 3d 582, 585, 688 N.E.2d 667 (1997); *Transcontinental Insurance Co. v. National Union Fire Insurance Co.*, 278 Ill. App. 3d 357, 361, 662 N.E.2d 500 (1996);

(2) " 'arising or in any manner growing out of *the* work performed \*\*\* whether or not caused or alleged to be caused in whole or in part by the fault or negligence of Owner.' " (Emphasis added.) *Juretic v. USX Corp.*, 232 Ill. App. 3d 131, 132, 596 N.E.2d 810 (1992); and

(3) " 'any and all claims that may arise on the part of any of [contractor's] employees \*\*\* by reason of injury, death, or *any claim while in pursuit of this contract*.' " (Emphasis added.) *Bosio v. Branigar Organization, Inc.*, 154 Ill. App. 3d 611, 612, 506 N.E.2d 996 (1987).

We conclude that the Blommaert subcontract's indemnity provision on its face was not void.

■ However, even if we were to assume the indemnity provision

was void, we also look to the insurance provision of the Blommaert subcontract to determine if General Casualty had a duty to defend O'Neil from allegations that it was negligent. A promise to obtain insurance is different from a promise to indemnify. *Zettel v. Paschen Contractors, Inc.*, 100 Ill. App. 3d 614, 617, 427 N.E.2d 189 (1981). When there is a promise to obtain insurance, the promisor agrees to procure, and pay for, insurance but bears no responsibility in the event of injury or damages once the insurance is obtained. *Zettel*, 100 Ill. App. 3d at 618. Section 1 of the Act permits a general contractor to obtain insurance through a subcontractor. *Zettel*, 100 Ill. App. 3d at 619. An agreement in a construction contract requiring a contractor to provide insurance for the general contractor protects the interests of the public and the construction workers because it ensures that there is a potential source of compensation for injuries. See *Bosio*, 154 Ill. App. 3d at 614 (contractor to provide insurance for the owner); *St. John v. City of Naperville*, 155 Ill. App. 3d 919, 922, 508 N.E.2d 1128 (1987).

Cases have upheld the validity of provisions requiring the party named as indemnitee to be named as an additional insured on the indemnitor's insurance policy where the insurance provision is not inextricably tied to a void indemnity agreement. *E.g.*, *Juretic*, 232 Ill. App. 3d 131, 596 N.E.2d 810 (despite a paragraph stating that the insurance would cover the contractor's obligations to the owner under the indemnification clause of the agreement, other paragraphs stated that the insurance would also cover the contractor's and owner's liability to pay for injury and damages connected with or growing out of the contractor's performance, and the owner was required to be added as an additional insured under these areas of coverage); *Tanns*, 293 Ill. App. 3d 582, 688 N.E.2d 667 (in addition to void indemnity agreement, another provision required that subcontractor would obtain insurance with the general contractor to be named as an additional insured); *Jandrisits*, 283 Ill. App. 3d 152, 669 N.E.2d 1166 (contractor was required to add the owner as an additional insured on insurance policies).

█ Although the insurance provision in the Blommaert subcontract requires insurance "to cover" the indemnity agreement and states that coverage is "afforded for" the indemnity provision, the provision also requires that O'Neil be named as an additional insured on Blommaert's comprehensive general liability insurance. It stands separate and apart from the indemnity agreement as an agreement to purchase insurance for the general contractor. We conclude that the insurance provision is not tied inextricably to the indemnity agreement. The trial court did not err in entering summary judgment in favor of As-

surance. General Casualty owed O'Neil defense costs as the primary insurer of an additional insured.

■ General Casualty next argues that the trial court should have awarded as damages to Assurance only 50% of the defense costs incurred for O'Neil's defense because General Casualty and Assurance had an agreement that General Casualty's share would be 50% (with the other 50% to be paid by another insurer).

General Casualty agreed to pay 50% of the defense costs pursuant to a reservation of rights to contest its duty to defend. Therefore, even General Casualty did not treat the 50% arrangement as a binding agreement. There is no evidence that Assurance agreed that General Casualty would not be obligated to pay 100%; rather, the letters in the record to which General Casualty refers merely confirm that General Casualty would pay 50% without giving up its right to dispute even that percentage later. We find there was no agreement between the two insurance companies limiting General Casualty's defense costs to 50%.

General Casualty next argues that the award of damages was in error because a large number of the billing entries reflected attorney fees for insurance coverage work rather than defense work. The challenged billing entries appear to be for the work of O'Neil's attorneys in determining whether numerous other insurers of O'Neil were obligated to share in O'Neil's defense costs. Assurance does not dispute that General Casualty should not be liable for insurance coverage billings concerning General Casualty's obligation but asserts that costs of contacting other insurers were properly reimbursable by General Casualty as they were to the benefit of General Casualty.

■ Unless authorized by statute or contract, attorney fees or costs are not recoverable by the successful party. *Society of Mount Carmel v. National Ben Franklin Insurance Co.*, 268 Ill. App. 3d 655, 676, 643 N.E.2d 1280 (1994); see also *Tuell v. State Farm Fire & Casualty Co.*, 132 Ill. App. 3d 449, 477 N.E.2d 70 (1985) (an insured may not recover attorney fees and costs for bringing a declaratory judgment against the insurer).

■ The only authority for an award of attorney fees is the General Casualty insurance policy. Under the insurance policy, General Casualty had a "duty to defend" O'Neil against claims that fell within the insurance policy's coverage. However, the fees disputed by General Casualty were for work in determining which insurers were responsible for paying for the defense of the lawsuit; the fees were not defense costs themselves that General Casualty was obligated to provide to pay for its duty to defend. Assurance's argument that General Casualty is liable for those fees because contacting other insurers was to

the benefit of General Casualty is not persuasive; a benefit to the primary insurer is not a test of what is a defense cost.

We hold that General Casualty is not liable to Assurance for the law firm's time in contacting other insurers to get them to share in defense costs. The award of damages is reversed, and the cause is remanded.

■ General Casualty next argues that the Interest Act did not apply to the judgment herein because an insurance policy is not of the same class of things listed in the Interest Act: bond, bill, or promissory note. We will address the issue because it is likely to come up again on remand. *People v. Vasquez*, 307 Ill. App. 3d 670, 673, 718 N.E.2d 356 (1999).

Section 2 of the Interest Act states which creditors may be awarded interest:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." 815 ILCS 205/2 (West 1998).

The case of *New Hampshire Insurance Co. v. Hanover Insurance Co.*, 296 Ill. App. 3d 701, 708, 696 N.E.2d 22 (1998), considered the argument that the things enumerated in the Interest Act fit the definition of commercial paper. The court concluded that an insurance policy in that case came within the Interest Act and that the umbrella insurer was entitled to prejudgment interest on a portion of the settlement it had paid and defendant, as the primary insurer, was required to reimburse the other insurance company. *New Hampshire*, 296 Ill. App. 3d at 709. See also *Liberty Mutual Insurance Co. v. Westfield Insurance Co.*, 301 Ill. App. 3d 49, 703 N.E.2d 439 (1998). We follow this reasoning and hold that prejudgment interest was proper in this case.

The judgment is affirmed in part and reversed in part, and the cause is remanded on the issue of damages.

HALL, P.J., and WOLFSON, J., concur.