ANTHONY BOSIO, Plaintiff, v. THE BRANIGAR ORGANIZATION, INC., Defendant and Third-Party Plaintiff-Appellant (E. M. Melahn Construction Company, Third-Party Defendant-Appellee; W. A. Rakow & Associates, Ltd., Third-Party Defendant).

Second District   No. 2—86—0847

Opinion filed April 9, 1987.

James J. Graney, of Sweeney & Riman, Ltd., of Chicago, for appellant.

John R. Wienold, of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Branigar Organization, Inc. (Branigar), appeals from the dismissal of the breach-of-contract count of its third-party complaint against E. M. Melahn Construction Company (Melahn). The single issue raised is whether the contract provision which required Melahn to provide public liability insurance for Branigar's benefit was enforceable under a statute which makes indemnification agreements in construction contracts void and unenforceable.

Plaintiff, Anthony Bosio, an employee of Melahn's, filed a two-count complaint against Branigar alleging that he was injured while working on Branigar's premises when a ditch caved in. He alleged negligence and a violation of the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60 *et seq.*). Branigar filed a third-party complaint against W. A. Rakow & Associates, Ltd., the engineer which provided the specifications for the construction project, and later filed a third-party complaint against Melahn. The complaint against Melahn alleged that Branigar was entitled to indemnification and contribution from Melahn and, in count III, alleged that Melahn was obligated under their construction contract to defend and insure Branigar against plaintiff's suit. Branigar alleged that Melahn breached the contract by failing to defend and hold Branigar harmless.

A copy of the contract, dated December 19, 1977, was attached to the third-party complaint. The construction contract provided, in pertinent part:

> "The CONTRACTOR further agrees that it will save and keep harmless the OWNER [Branigar] from any and all claims that may arise on the part of any of its employees, agents or servants, by reason of injury, death or any claim while in pursuit of this contract and that all employees, agents or servants of the CONTRACTOR shall in no manner be construed to be employees of the OWNER.
>
> ***
>
> The CONTRACTOR shall furnish public liability insurance in the principal sum of $100,000.00 to $300,000.00 with insurance carrier thereon satisfactory to the OWNER, indemnifying and saving harmless the OWNER from any and all personal injury claims arising thereunder by reason of the performance of this contract."

Melahn filed a motion to dismiss in which it argued, in pertinent part, that the part of the agreement which required Melahn to provide public liability insurance indemnifying Branigar and saving it harmless, relied on by Branigar in its breach-of-contract count, is unenforceable under section 1 of "An Act in relation to indemnity in certain contracts" (Act) (Ill. Rev. Stat. 1985, ch. 29, par. 61). The court granted Melahn's motion to dismiss as to the indemnification and breach-of-contract counts. The court found that the contract provision relied on by Branigar was void under the statute.

■■ Branigar maintains on appeal that the trial court erred in dismissing its breach-of-contract count against Melahn because construction contract provisions requiring a contractor to obtain liability insur-

ance for an owner are not invalid under the statute.

Section 1 of the Act states:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." (Ill. Rev. Stat. 1985, ch. 29, par. 61.)

Our supreme court has stated that this section serves to protect the construction worker and the general public from suffering construction-related injuries by encouraging accident-prevention measures. (*Capua v. W. E. O'Neil Construction Co.* (1977), 67 Ill. 2d 255, 260, 367 N.E.2d 669; *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 499, 336 N.E.2d 881.) The statute voids, as against public policy, indemnification provisions in construction contracts relieving a person from liability for his own negligence. (See *Lohman v. Morris* (1986), 146 Ill. App. 3d 457, 460, 497 N.E.2d 143.) There is no dispute that the separate indemnification provision in the contract here is unenforceable based on section 1 of the Act. The issue presented is whether the other clause in the contract requiring Melahn to furnish public liability insurance is likewise unenforceable as an indemnification agreement.

Under the Act, an agreement for indemnity for one's own negligence will be enforced if it is found in a construction bond or an insurance contract. (*Champagnie v. W. E. O'Neil Construction Co.* (1979), 77 Ill. App. 3d 136, 142, 395 N.E.2d 990; see Ill. Rev. Stat. 1985, ch. 29, par. 63.) Section 3 of the Act provides:

> "This Act does not apply to construction bonds or insurance contracts or agreements." (Ill. Rev. Stat. 1985, ch. 29, par. 63.)

This section, however, does not apply to the situation here, as an agreement to obtain insurance in a construction contract is not an insurance contract or an agreement of insurance. *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 617, 427 N.E.2d 189.

The court in *Capua v. W. E. O'Neil Construction Co.* (1977), 67 Ill. 2d 255, 367 N.E.2d 669, in holding that indemnity and hold-harmless agreements in construction bonds are valid under the Act, discussed favorably an agreement in a construction contract requiring a contractor to post a construction bond in which the contractor agrees to indemnify or hold harmless the owner. The court stated that such a

requirement would allow an injured worker to look to the surety for satisfaction of his claim if the owner is unable to satisfy his liability. The court concluded that this furthers the purpose of the Act to protect the interests of the construction worker and the general public by preserving a potential source of compensation for injured workers, noting that there will be times when a worker will be unable to recover from the owner or contractor, as when the defendant is insolvent or the damages are too large for him to satisfy. 67 Ill. 2d 255, 260-61, 367 N.E.2d 669.

The same reasoning has been held to be appropriate to the situation here. An agreement in a construction contract requiring a contractor to provide insurance protecting the owner also protects the interests of the construction worker and the general public by preserving a potential source of compensation for injured workers. The court in *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189, determined that a promise to obtain insurance is not the same as a promise to indemnify. (100 Ill. App. 3d 614, 617, 427 N.E.2d 189; see also *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 781-84, 401 N.E.2d 1032; *Hooks v. Southeast Construction Corp.* (D.C. Cir. 1976), 538 F.2d 431, 433.) The court noted that under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages, while under an agreement to obtain insurance, the promisor merely agrees to procure the insurance and pay the premiums. (*Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 617-18, 427 N.E.2d 189.) The *Zettel* court, therefore, held that the agreement at issue there, which required the subcontractor to obtain insurance covering, *inter alia*, claims arising under the Structural Work Act, was not prohibited by the Act and was enforceable. The court reasoned that, as the statute clearly permits the general contractor to obtain insurance to cover its liabilities, there is no reason to strike down, as against public policy, an agreement with the subcontractor to obtain insurance. 100 Ill. App. 3d 614, 619-20, 427 N.E.2d 189; see also *Coverdill v. Lurgi Corp.* (1986), 146 Ill. App. 3d 112, 114, 496 N.E.2d 1007; *Cone Brothers Contracting Co. v. Ashland-Warren, Inc.* (Fla. App. 1984), 458 So. 2d 851, 855-56.

■ The contract provision here requiring Melahn to furnish "public liability insurance" was not void under the statute as section 1 of the Act applies to indemnification agreements and not to agreements to obtain insurance. Public liability insurance means general liability insurance or insurance such as protects a person against loss or liability by reason of personal injures. (1 G. Couch, Insurance sec. 1.93, at

257 (2d ed. 1984).) The further language in the provision that Melahn shall furnish public liability insurance "indemnifying and saving harmless" Branigar does not make this an unenforceable indemnity or hold-harmless agreement. Rather, liability insurance, as defined, "indemnifies against liability on account of injuries to the person or property of another." (Black's Law Dictionary 723 (5th ed. 1979).) Thus, the pertinent contract provision at issue here is an agreement to obtain public liability insurance for Branigar. It is not an agreement to indemnify or hold harmless another person from that person's own negligence, which is unenforceable under the statute. The concepts of public liability insurance and indemnity are not one and the same, but are distinct.

In the case relied on by the trial court, *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542, the court found that a provision in a construction contract requiring a subcontractor to provide insurance was unenforceable. The insurance clause in that contract, however, required the subcontractor to maintain insurance "insuring all the Subcontractors indemnity obligations." The court determined that this insurance provision was unenforceable, as it sought insurance against a void agreement to indemnify. (137 Ill. App. 3d 352, 363-65, 484 N.E.2d 542.) The difference between this insurance provision and the one in the case at bar is that the provision in *Shaheed* provided for insurance for only the void indemnity obligation, whereas the provision here required a public liability insurance policy for all personal injury claims arising from the performance of the contract.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded.

Reversed and remanded.

NASH and UNVERZAGT, JJ., concur.