FOURTH DIVISION
March 8, 2007

No. 1-05-3511

| | | |
|---|---|---|
| SEARS, ROEBUCK AND COMPANY, a New York Corporation, and ALFREDO JIJON, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| CHARWIL ASSOCIATES LIMITED PARTNERSHIP, | ) ) | Honorable |
| Defendant-Appellant. | ) ) | Patrick E. McGann, Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Defendant Charwil Associates, L.P. (Charwil), appeals from the trial court's judgement for plaintiffs Sears, Roebuck & Co. and Alfredo Jijon (hereafter collectively referred to as Sears) following a trial upon stipulated facts. On appeal, Charwil contends that the trial court erroneously interpreted that the lease agreement it entered into with Sears required Charwil to maintain automobile liability coverage on behalf of Sears for an injury caused by Sears' employee while driving a customer's vehicle in a common area of a shopping mall.

BACKGROUND

The stipulated facts presented to the trial court provide a sufficient summary of the facts in this case. On or about May 30, 1989, Sears, as tenant, entered into a lease agreement with Charwil, as landlord, for a store and automotive center to be located in the Charlestowne Mall (Mall) in St. Charles, Illinois. Charwil was a limited partnership formed to own the Mall. Charwil hired Wilmorite, Inc. (Wilmorite), a real estate development company and affiliate of Charwil, to develop the mall.

The original form of the lease agreement, which was prepared by Sears, was provided to Wilmorite as the form to be used for developments in which Sears had agreed to lease space. The lease included insurance provisions in paragraphs 21 and 22 of Part I. Paragraph 21, entitled "Landlord's Insurance," provided in pertinent part:

> "Landlord will obtain and maintain or cause
> to be obtained and maintained, at all times
> during the construction of the improvements
> specified in Part I, Section 4, and
> throughout the Term, the following insurance
> with companies approved by Tenant and
> containing standard provisions:
>
>                   * * *

(b) <u>Comprehensive General Liability Insurance</u>

Including, but not limited to, coverage for Personal Injuries with limits of not less than Five Million Dollars ($5,000,000.00) combined single limit for bodily injury and property damage, per occurrence, including Tenant as a named insured."

In addition, paragraph 22, entitled "Landlord's Common Area Indemnity," provided:

"Landlord agrees to be responsible for, indemnify Tenant, its directors, officers, agents and employees, against, and save Tenant, its directors, officers, agents and employees harmless from, all liability from any and all damages, claims or demands that may arise from or be occasioned by the condition, use or occupancy of all Common Areas on the Entire Tract by the customers, invitees, licensees and employees of Landlord, Tenant and Landlord's other tenants and all other occupants on the Entire Tract, and Landlord will defend Tenant against any such claim or demand and reimburse Tenant for

-3-

any cost incurred in connection therewith, including reasonable attorneys' fees. Landlord will obtain and maintain in a reputable insurance company or companies qualified to do business in the City of St. Charles, County of Kane, State of Illinois, liability insurance having limits for bodily injury or death of not less than Two Million Dollars ($2,000,000.00) for each person, Five Million Dollars ($5,000,000.00) for each occurrence and Two Hundred Fifty Thousand Dollars ($250,000.00) for property damage, and insuring the indemnity agreement. Tenant shall be named insured, on this policy. Further, each policy will expressly provide that it will not be subject to cancellation or material change without at least thirty (30) days prior written notice to Tenant. Landlord will furnish Tenant, concurrently with the execution of this lease, with insurance certificates and upon request by Tenant, copies of such policies required to be maintained hereunder."

1-05-3511

The lease agreement further provided, in pertinent part, in paragraph 25 of Part I, entitled "Defaults":

"No failure by Landlord or Tenant to insist upon performance or the strict performance of any covenant, condition or other provisions of this Lease or to exercise any right or remedy consequent upon a breach or other default thereof shall constitute a waiver or assumption thereof by the other party, and no acceptance, use or occupancy of the Tenants' Demised Premises or Common Area shall constitute a waiver or assumption by Tenant of any duty or obligation of Landlord with respect thereto."

In addition, paragraph 5 of Part III of the lease agreement, entitled "No Waiver," provided in pertinent part:

"Any failure of Landlord or Tenant promptly to exercise the rights or pursue the remedies accruing hereunder by reason of any breach or default of the other will not operate as a waiver, but the respective rights and remedies will be available to each party at any time prior to the complete remedying of

any breach or default by the other."

Subsequently, Charwil obtained a commercial general liability insurance policy from Acceptance Insurance Company (Acceptance), which named Sears as an insured. The Acceptance policy provided limits of $1 million for each occurrence and $2 million in aggregate. Charwil also purchased excess liability insurance from Travelers Casualty and Surety Company (Travelers), which provided coverage of up to $25 million per occurrence in excess of the Acceptance policy. During the negotiation of the lease agreement, the parties did not discuss the subject of defendant having to provide automobile liability insurance. Finally, the record does not disclose whether plaintiff requested or received certificates of insurance from defendant, nor does it show that plaintiff objected to the insurance obtained by defendant.

On June 1, 1996, Sears' customer Rosa Kresin was severely injured when she was struck by another customer's vehicle that Sears' employee Alfredo Jijon was backing out of a Sears automotive service bay. Kresin sustained her injury in the ring road of the mall, which is a common area.

On June 26, 1996, Kresin filed suit against Sears. She thereafter obtained a judgment for $15,691,690, which was affirmed on appeal. Kresin v. Sears, Roebuck & Co., 316 Ill.

App. 3d 433 (2000). The parties ultimately settled the lawsuit for $17,250,000, which Sears has paid Kresin.

As Sears dealt with Kresin's lawsuit, it filed a third-party action against Charwil and its insurers, Acceptance and Travelers. That action was severed and transferred to the chancery division in December 1998. Subsequently, in January 2000, Sears filed its fourth amended complaint against Charwil, Acceptance, and Travelers. Counts I and II were directed against Charwil, counts III and IV were against Acceptance, and count V against Travelers.

On January 4, 2001, the circuit court granted Sears' motion to voluntarily dismiss count I, which alleged breach of an express indemnity agreement against Charwil. Thereafter, on February 16, 2001, the trial court granted summary judgment for Acceptance and Travelers on counts III, IV, and V. That ruling was affirmed on appeal. Sears, Roebuck & Co. v. Acceptance Insurance Co., 342 Ill. App. 3d 167 (2003). Hence, only count II, which alleged breach of contract against Charwil for its failure to procure the insurance allegedly required as per paragraph 22, remained. The record discloses that on August 3, 2001, the circuit court denied Sears' motion for summary judgment on count II of its fourth amended complaint.

On September 1, 2004, the parties deposed Sears' expert

1-05-3511

witness, Michael Cass. They also deposed Charwil's expert witness, Steven Sachs, on January 11, 2005.

The parties attached copies of the witnesses' deposition transcripts to the agreed stipulation of facts. Cass testified that he read the lease to require Charwil to obtain insurance that would cover any incident that occurred in the common area of the mall, including if an airplane owned by a tenant crashed into the parking lot. He admitted, however, that he had never seen an insurance policy in which a landlord obtained motor vehicle coverage for a lessee and its employees driving in a parking lot.

Sachs in turn testified that in his 31 years in the insurance industry, he had never seen an agreement where a landlord agreed to insure a tenant for the tenant's own liability. Sachs further testified that "common general liability insurance" and "liability insurance" are used interchangeably in the insurance industry, and that "liability insurance" does not imply automobile insurance liability. He concluded, as he did in his October 25, 2004, opinion letter, that "use" in paragraph 22 referred to a "kiosk" or, alternatively, to an event or attraction that drew people into the store or served as an additional revenue stream, i.e., a carnival or an automatic teller machine.

At trial, the parties presented the stipulated facts

presented above and the deposition testimony of their experts. On August 10, 2005, the trial court delivered its ruling. Therein, the court first determined that Charwil honored its obligations under paragraph 21(b) of the lease agreement. The trial court then determined that "[a] plain reading of Paragraph 22 yields Charwil's agreement was twofold." The court found that Charwil agreed to indemnify Sears for any liability "that may arise from or be occasioned by the condition, use or occupancy of all Common Areas" of the Mall, and that its second obligation was to purchase insurance to fund that promise. The court stated that, in the instant case, "any failure to purchase the agreed upon insurance would only give rise to a claim for breach of contract if the duty to indemnify arose as a result of the crash."

The trial court proceeded to conclude that the language of the lease agreement was clear and unambiguous, and thus Sachs' testimony was inadmissible. The court then held that the "any and all" language in paragraph 22 was sufficient "to include indemnification for the Plaintiff's own negligence."

The trial court subsequently stated that Kresin's injuries did arise out of "the condition, use or occupancy" of the common area. Thus, the court stated that "Charwil breached its duty to indemnify Sears resulting in damages of $2,000,000.00," pursuant

1-05-3511

to the limitations in paragraph 22 of the lease.  The court concluded,

> "The failure of Sears to press its claim for indemnification is of no moment.  This is clear because the vehicle agreed upon between the parties to fund Charwil's promise was the insurance policy.  The failure to perform this separate promise gives rise to Sears' recovery."

Charwil now appeals.

### DISCUSSION

In this court, Charwil contends that the trial court erroneously interpreted the lease agreement to conclude that it required Charwil to obtain and maintain insurance on behalf of Sears to cover an injury such as that sustained by Kresin.  We disagree.

"The interpretation of a lease presents a question of law that a reviewing court is to determine independent of the trial court's judgment."  NutraSweet Co. v. American National Bank & Trust Co. of Chicago, 262 Ill. App. 3d 688, 694 (1994).  The rules for interpreting a lease are the same as those for interpreting a contract.  NutraSweet Co., 262 Ill. App. 3d at 694.  The instrument needs no interpretation and speaks for

itself where its language is definite and precise. NutraSweet Co., 262 Ill. App. 3d at 694. That said, where the instrument is "susceptible to one of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not likely enter into, the interpretation which makes a rational and probable agreement must be preferred." NutraSweet Co., 262 Ill. App. 3d at 695. Where doubt or uncertainty exists as to the meaning of the language used in a lease, it should be construed against the lessor and in favor of the lessee. NutraSweet Co., 262 Ill. App. 3d at 695.

We initially note that there is no dispute that Charwil obtained and maintained comprehensive general liability insurance with Sears named in accordance with paragraph 21 of the lease agreement. That said, this court has concluded that the June 1, 1996, incident was not covered under the comprehensive general liability insurance obtained by Charwil since it contained an automobile exclusion barring coverage. Sears, Roebuck & Co., 342 Ill. App. 3d at 175-176.

The language in paragraph 22, however, explicitly provided that Charwil, as the landlord, agreed to indemnify and hold harmless Sears, as the tenant, from

"all liability from any and all damages,

-11-

claims or demands that may arise from or be occasioned by the condition, use or occupancy of all Common Areas on the Entire Tract by the customers, invitees, licensees and employees of Landlord, Tenant and Landlord's other tenants and all other occupants on the Entire Tract."

It further provided:

"Landlord will obtain and maintain in a reputable insurance company or companies qualified to do business in the City of St. Charles, County of Kane, State of Illinois, liability insurance having limits for bodily injury or death of not less than Two Million Dollars ($2,000,000.00) for each person, Five Million Dollars ($5,000,000.00) for each occurrence and Two Hundred Fifty Thousand Dollars ($250,000.00) for property damage, and insuring the indemnity agreement."

A plain reading of the catch-all language in reference to Charwil's agreement to indemnify Sears for "any and all" claims arising from the use of the common area by a customer of the tenant clearly provided for indemnification of the June 1, 1996,

-12-

accident where Kresin, a customer of a tenant, Sears, suffered injuries arising from her use of the mall's common area. If the parties had intended otherwise, they could have provided exclusions in the lease to limit insurance coverage.

That said, we must determine whether Charwil breached the insurance provision in paragraph 22. In doing so, we recognize that as Charwil contends, the circuit court dismissed Sears' breach of promise to indemnify claim in count I with prejudice upon Sears' voluntary motion to dismiss that count. Contrary to Charwil's contention, however, that dismissal neither constituted an adjudication on the merits of count I nor damaged Sears' claim in count II for breach of a promise to insure.

First, Charwil erroneously supports its argument that Sears' dismissal of count I constituted an adjudication on the merits with Village of Arlington Heights v. American National Bank & Trust Co. of Chicago, 72 Ill. App. 3d 744 (1979). In Village of Arlington Heights, the plaintiff's voluntarily dismissal of its entire case against a defendant resulted in dismissal with prejudice of that defendant, and thus was "tantamount to an adjudication on the merits." Village of Arlington Heights, 72 Ill. App. 3d at 746. Conversely, in this case, plaintiff voluntarily dismissed one of the counts of his complaint, not a defendant. As such, that case is inapposite.

1-05-3511

Second, Sears did not have to show that Charwil breached its promise to indemnify in order to establish its claim that Charwil breached its promise to obtain and maintain insurance. This court has held that a promise to obtain insurance is not the same as a promise to indemnify. Bosio v. Branigar Organization, Inc., 154 Ill. App. 3d 611, 614 (1987). Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages. Bosio, 154 Ill. App. 3d at 614. Conversely, under an agreement to obtain insurance, a promisor simply agrees to procure insurance and pay premiums. Bosio, 154 Ill. App. 3d at 614. Thus, under an agreement to obtain insurance, the promisor bears no responsibility in the event of an injury or damages once the insurance is obtained. W.E. O'Neil Construction Co. v. General Casualty Co. of Illinois, 321 Ill. App. 3d 550, 557 (2001).

Here, paragraph 22 not only provided a promise by Charwil to indemnify Sears, but also provided immediately thereafter that Charwil promised to obtain and maintain insurance. It clearly stated that Charwil agreed to indemnify Sears for all liability from any claims that arose from the use of the mall common area by a tenant's customer. The paragraph then provided that Charwil was to obtain and maintain insurance for the purposes of "insuring the indemnity agreement." Given that language, we find

-14-

that the parties clearly intended for Charwil to obtain and maintain insurance for Sears to cover all liability from any claims that arose from a customer's use of the common area. Thus, where Charwil only obtained comprehensive general limited liability insurance which did not cover the June 1, 1996, accident involving a tenant's customer's use of the mall's common area (Sears, Roebuck & Co., 342 Ill. App. 3d 167), it breached its promise to provide insurance in paragraph 22 of the lease agreement.

In reaching this conclusion, we find that the clarity of the lease language negated the need for extrinsic evidence, including the testimony of the parties' experts. Nonetheless, we briefly comment on the deposition testimony of the parties' expert witnesses. With regard to Cass, we find that his interpretation as to the insurance that Charwil was required to obtain as per paragraph 22 presented an extreme hypothetical involving a tenant's airplane crashing into the parking lot. Although we need not decide whether such an unforeseen incident would be covered, we do agree that the "any and all" language of the lease did provide for insurance coverage for an automobile collision, which presented a clearly foreseeable event in a shopping mall parking lot. As for Charwil's expert Sachs, we observe that he provided an absurdly narrow definition of "use" when defining

1-05-3511

that term as used in paragraph 22. Despite the inclusive language of paragraph 22, Sachs proffered that "use" therein merely referred to kiosks or other events used to draw people into Sears. His definition of Sears' "use" of the common area not only neglected the "any and all" claims language in paragraph 22, but also ignored the language as to a customer's use of the common area. As such Sachs' interpretation of "use" in paragraph 22 would have provided no support to Charwil's interpretation of the lease agreement.

                          CONCLUSION

For the above reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAMPBELL and NEVILLE, JJ., concur.