CLARENDON AMERICA INSURANCE COMPANY, Plaintiff, v. PRIME GROUP REALTY SERVICES, INC., Defendant and Third-Party Plaintiff-Appellant (Ala Carte Entertainment, Inc., Defendant and Third-Party Defendant-Appellee; William Klinowski, Defendant; Associated Underwriters of America, Inc., Fourth-Party Defendant).

First District (4th Division)   Nos. 1—08—0791, 1—08—1985 cons.

Opinion filed March 26, 2009.—Rehearing denied May 4, 2009.

Smith Amundsen LLC, of Chicago (James P. Balog and Michael Resis, of counsel), for appellant.

Matthew J. Morrissey & Associates, of Chicago (Matthew J. Morrissey, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant and third-party plaintiff Prime Group Realty Services, Inc. (Prime Group), appeals the trial court's granting of summary judgment in Ala Carte Entertainment, Inc.'s (Ala Carte) favor and denying its motion for summary judgment relating to a lease entered into between Prime Group as lessor and Ala Carte as lessee. On appeal, Prime Group claims that the trial court erred in not finding that Ala Carte breached its duties under the lease by failing to procure the required insurance covering the premises and Prime Group's acts and omissions. For the reasons that follow, we reverse and remand with directions.

Ala Carte's predecessor entered into a lease dated April 29, 1988, with Prime Group's predecessor to operate a restaurant at a commercial office building located at 1701 Golf Road in Rolling Meadows. Prime Group owns and operates the building. Ala Carte operated Magnum's Restaurant and a cafeteria on the ground-floor level of the building, which is also known as Continental Towers. The executed lease identified the "demised premises" in part as:

> "being certain space in the plaza level and basement level and described in the plan attached hereto as Exhibit 'A' in the building as shown on Exhibit B (hereinafter known as 'Building') known as the Continental Towers Commercium, located on the real estate legally described in Exhibit 'C' (the 'Real Property') located at 1701 Golf Road, Rolling Meadows, Illinois, which is part of an office complex consisting of the Building and three office towers commonly known as Continental Towers ('Continental Towers')."

The lease contained a waiver of claims and indemnity paragraph set forth in section 14, which states in part that "[n]othing in this section shall be deemed to relieve Landlord from liability for its own negligence or willful misconduct or that of anyone for whom Landlord is legally responsible." The lease also included a provision relating to the landlord's responsibility for repairs, which states:

> "35. LANDLORD'S RESPONSIBILITY FOR REPAIRS.
>
> Landlord shall, at its own expense promptly make all repairs and replacements, structural and otherwise, reasonably necessary or desirable in order to keep in good order and repair the exterior walls of the premises, the roof and roofing, the exterior and public portions of the Building (including the public halls and stairways, plumbing, wiring and other building equipment for the general supply of water, heat, air conditioning, gas and electricity) and the Real Property (including the Parking Area).
>
> Notwithstanding anything to the contrary contained in this Lease, Landlord shall not be relieved from liability for damages resulting from Landlord's own negligence or willful misconduct in

making repairs or resulting from the negligence or willful misconduct of anyone for whom Landlord is legally responsible." Paragraph 36 of the lease contained an insurance provision, which states in relevant part:

"36. INSURANCE. (a) Tenant shall, at its sole cost and expense, maintain at all times with responsible insurance carriers acceptable to Landlord licensed to do business in the State of Illinois, insurance covering the premises for the mutual benefit of Landlord and Tenant as follows:

\* \* \*

(v) Comprehensive General Liability Insurance, with such limits as may be reasonably requested by Landlord from time to time, but not less than a $5,000,000.00 excess liability for bodily injury and property damage;

\* \* \*

(c) All insurance policies shall name Landlord [Prime Group], American National Bank and Trust Company of Chicago as Trustee under Trust No. 40935; Continental Towers Associates—I, an Illinois limited partnership; Continental Offices, Ltd., and General Electric Credit Corporation as additional insureds, as their respective interests may appear. Landlord may, by written notice to Tenant, designate other parties as additional insureds. All such insurance shall provide that:

(i) The coverage provided includes the premises;
\*\*\*
(iii) All losses shall be payable notwithstanding any act or negligence of Tenant or Landlord or the occupation or use of the premises for purposes more hazardous than permitted by terms of such policy."

Ala Carte procured an insurance policy from Clarendon America Insurance Company (Clarendon) that listed Prime Group as an additional insured. The issued Clarendon policy also included an endorsement that excluded commercial general liability coverage to an additional insured for "[i]ts own acts or omissions."

The instant litigation arose out of an injury to William Klinowski, an Ala Carte employee. On February 26, 2002, Klinowski injured himself after repairing the heating, ventilating, air conditioning (HVAC) system located on Continental Towers's roof by slipping on the roof while climbing over the roof joint. According to a lease amendment dated May 29, 1998, Ala Carte bore the responsibility of maintaining the HVAC system located on the roof assigned to the demised premises.

Klinowski filed a personal injury complaint naming Prime Group as a defendant relating to the injuries resulting from his slip on the building's roof. Prime Group filed an answer denying negligence and filed a third-party complaint against Ala Carte. Prime Group's complaint against Ala Carte sought in count I contribution for Ala Carte's negligence in injuring Klinowski, and in count II Prime Group sought damages for Ala Carte's breach of the lease by failing to procure insurance for Prime Group's protection.

Prime Group tendered defense of the Klinowski action to Ala Carte and Clarendon on May 13, 2004. Clarendon responded to Prime Group on December 15, 2004, denying coverage because Prime Group was not a named insured or an additional insured under the policy.

On June 3, 2005, Clarendon filed a complaint for declaratory judgment stating that it did not owe coverage to Prime Group or Ala Carte relating to the Klinowski litigation. Clarendon amended its complaint on August 15, 2005. Prime Group and Ala Carte filed answers to Clarendon's declaratory judgment action. On May 4, 2006, the trial court granted Ala Carte's insurance broker's, Associated Underwriters of America, Inc. (Associated Underwriters), petition to intervene and to file a responsive pleading. On June 1, 2006, Associated Underwriters filed its answers to Clarendon's complaint and requested an order directing Clarendon to provide a defense to Prime Group and indemnify it or, alternatively, enter an order stating that the lease did not require Ala Carte to provide insurance for Prime Group.

In a letter sent to Prime Group's counsel on August 2, 2006, Clarendon agreed to defend Prime Group under a reservation of rights since Prime Group was named as an additional insured in an endorsement issued by Clarendon. Clarendon denied coverage to Prime Group "to the extent that it is determined that William Klinowski's injuries are the result of Prime Group's negligence."

Associated Underwriters filed a motion for partial summary judgment on May 11, 2007, in response to Prime Group's third-party complaint asserting that Ala Carte met all of its contractual obligations to Prime Group under the lease. Prime Group filed a motion for partial summary judgment on May 18, 2007, against Ala Carte claiming that Ala Carte failed to procure comprehensive general liability insurance complying with its lease obligations to Prime Group.

On June 1, 2007, the trial court entered an order reflecting a settlement for $90,000 in the underlying Klinowski action.

Ala Carte responded to Prime Group's summary judgment motion by filing its own summary judgment motion on June 5, 2007, alleging that Klinowski's injury did not arise from its occupancy of the demised premises and it had no duty to maintain the portion of the roof where

the injury occurred. Ala Carte also filed Rule 137 (155 Ill. 2d R. 137) sanctions against Prime Group.

On September 25, 2007, the trial court granted summary judgment in Ala Carte's favor and denied Prime Group's motion for summary judgment. The trial court did not find reasonable a construction of the lease requiring Ala Carte to obtain insurance for Prime Group for its own negligence unrelated to any negligence of Ala Carte. The trial court also stated that its ruling in Ala Carte's favor rendered moot the intervenor's motion for summary judgment "because it necessarily assumes that Ala Carte did obtain the insurance it was required to obtain for Prime Group."

On September 28, 2007, Clarendon filed a motion for summary judgment stating in part that pursuant to the trial court's September 25, 2007, order, any remaining claims of Prime Group against Ala Carte were dismissed in Ala Carte's favor and all claims relating to the Klinowski injury were resolved. Clarendon requested a declaratory judgment in its favor finding that all of Clarendon's duties and obligations under the commercial general liability policy were fulfilled.

Prime Group filed a motion to reconsider on November 1, 2007, which the trial court denied on February 21, 2008. The trial court also granted Clarendon's summary judgment motion on February 21, 2008, and further stated that "[t]his ruling extinguishes all controversies as to all parties in this matter and this case is dismissed in its entirety." Prime Group timely filed a notice of appeal. On July 21, 2008, the trial court denied Ala Carte's Rule 137 sanctions motion. Prime Group filed a second notice of appeal. This court granted Prime Group's motion to consolidate the two appeals.

A court properly grants summary judgment if "the pleadings, taken together with any depositions, admissions or affidavits, demonstrate that there is no genuine issue of material fact." *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 210 Ill. App. 3d 301, 308-09, 569 N.E.2d 88, 92 (1991). We review a trial court's ruling of summary judgment motions *de novo. Maxit, Inc. v. Van Cleve*, 231 Ill. 2d 229, 235-36, 897 N.E.2d 745, 749 (2008).

The issue on appeal is whether the trial court erred in granting summary judgment in Ala Carte's favor finding that Ala Carte did not breach the lease because it had no obligation to insure or indemnify Prime Group for its own negligence. Prime Group claims that under the lease terms, Ala Carte was required to procure comprehensive general liability insurance on Prime Group's behalf insuring Prime Group for its own acts and omissions. Prime Group maintains that Klinowski's injuries resulted from him performing Ala Carte's duties to Prime Group that required Ala Carte to keep the rooftop HVAC

units serving the premises in good operating condition and to make all necessary repairs. Prime Group maintains that a lease requiring the tenant to include the landlord on the tenant's insurance policy insuring the landlord for its own negligence is not commercially unreasonable.

Ala Carte responds that under the lease terms, it had no obligation to insure or indemnify Prime Group for injuries resulting from Prime Group's own negligence in an area outside the lease premises. Ala Carte claims that Klinowski's injury resulted from the roof's condition, which Prime Group reserved exclusive control over according to the lease and Ala Carte's insurance obligations were not expanded to include the roof. Ala Carte contends that the lease terms required Ala Carte to procure insurance and indemnification for occurrences where it was solely negligent, or where both Ala Carte and Prime Group were negligent, but the lease specifically precludes Ala Carte from any responsibility when Prime Group was solely negligent. As such, Ala Carte maintains that it fulfilled its obligations under the lease by procuring the required insurance and naming Prime Group as an additional insured on the insurance policy. Ala Carte claims that the defective roof was not designated as part of the demised or leased premises and it, thus, cannot be held responsible for insuring the roof. Ala Carte agrees with the trial court's ruling that the insurance provision in paragraph 36 of the lease was ambiguous given the other lease provisions delineating the parties' rights and responsibilities. Ala Carte claims that since the trial court concluded that the lease's insurance provision relied upon by Prime Group was ambiguous, the lease must be construed against its drafter, Prime Group. Thus, Ala Carte contends that the trial court did not err in granting summary judgment in its favor.

The rules adopted for interpreting a lease are the same rules used to interpret a contract. *Sears, Roebuck & Co. v. Charwil Associates, Limited Partnership*, 371 Ill. App. 3d 1071, 1076, 864 N.E.2d 869, 874 (2007). If a lease's language is definite and precise, then the lease speaks for itself and no interpretation is necessary. *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1076, 864 N.E.2d at 874. An ambiguity regarding the language used in a lease arises when the language is susceptible to more than one meaning, but an ambiguity is not created merely because the two parties cannot agree on the language's meaning. *Shields Pork Plus, Inc. v. Swiss Valley Ag Service*, 329 Ill. App. 3d 305, 310, 767 N.E.2d 945, 949 (2002). If an uncertainty arises concerning the meaning of the lease's terms, then the lease should be construed in the lessee's favor and against the lessor. *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1076, 864 N.E.2d at 874.

■ This court has identified that a lease provision's promise to indemnify differs from a promise to insure. *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1078, 864 N.E.2d at 875. A promise to indemnify requires the promisor to agree "to assume all responsibility and liability for any injuries or damages" whereas a promise to insure requires the promisor to agree to "procure insurance and pay premiums." *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1078, 864 N.E.2d at 875. A promise to insure relieves the promisor of responsibility "in the event of an injury or damages once the insurance is obtained." *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1078, 864 N.E.2d at 875.

■ With these principles in mind, we begin our analysis by considering whether the roof area where the underlying injury occurred should be considered a part of the demised premises as defined in the lease. We first turn to the language of the lease's introductory paragraph, which defines the term "demised premises" in part as "being certain space in the plaza level and basement level *** in the building *** known as the Continental Towers Commercium." Turning next to subsection (a) of the insurance paragraph numbered 36, we note that Ala Carte was required to maintain "insurance covering the premises for the mutual benefit of Landlord and Tenant."

Prime Group does not allege on appeal that Ala Carte failed to abide by its promise to obtain insurance covering the premises as expressly defined in the lease. Prime Group, however, seeks to expand the definition of the term "premises" as defined in the lease to include the rooftop area where Klinowski was injured relying on the lease amendment requiring Ala Carte to maintain the rooftop HVAC. Prime Group is alleging that the otherwise unambiguous term "premises" should be interpreted to include "other areas necessary or incidental to an insured's operations." *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 155, 466 N.E.2d 1091, 1095 (1984). We do not dispute the proposition of law that leased premises may include areas in addition to the leased areas, but our task on appeal is to address whether Ala Carte breached its duty to procure insurance and not whether insurance coverage was erroneously denied. Given the limited scope of this court's review, we conclude that Ala Carte procured insurance for the premises as expressly defined in the lease.

We now address whether Ala Carte procured the required insurance according to the lease. Adopting a plain reading of the insurance provision in section 36(c)(iii), we read that section to require Ala Carte to name Prime Group as an additional insured to an insurance policy providing the payment of all losses "notwithstanding any act or negligence of Tenant or Landlord." Here, the conjunction "or" was

expressly used in the lease. The term "or" is commonly understood to mean a word that is "used as a function word to indicate (1) an alternative between two different or unlike things, states, or actions; ***; (2) choice between alternative things, states, or courses." Webster's Third New International Dictionary 1585 (1986). Thus, by using the term "or," the parties agreed that Ala Carte was required to procure insurance if either it or Prime Group was negligent. The express language used in section 36(c)(iii) stating Ala Carte's responsibilities to procure insurance is clear and unambiguous. When interpreting a lease's language, this court is prohibited from reading a provision creating an ambiguity where none exists. *Allstate Insurance Co. v. Mathis*, 302 Ill. App. 3d 1027, 1029, 706 N.E.2d 893, 894 (1999). Accordingly, we cannot conclude that section 36(c)(iii) contains ambiguous language.

We also disagree with Ala Carte that section 36(c)(iii) is rendered ambiguous in light of other lease provisions. Ala Carte argues on appeal that the landlord/tenant responsibilities set forth in sections 14 and 35 of the lease render section 36(c)(iii) ambiguous. Section 14, entitled "Waiver of Claims and Indemnity," expressly states that "[n]othing in this section shall be deemed to relieve Landlord from liability for its own negligence or willful misconduct or that of anyone for whom Landlord is legally responsible." That section, however, identifies the prohibition of the Landlord to be *indemnified* for its own negligence. Illinois public policy has long held that a party may not be indemnified for its own negligent acts. *Economy Mechanical Industries, Inc. v. T.J. Higgins Co.*, 294 Ill. App. 3d 150, 155-56, 689 N.E.2d 199, 203 (1997). Such a prohibition, however, does not extend to the promise of one party to procure insurance for another's negligent acts. Illinois cases have routinely distinguished between the duty to indemnify and the duty to procure insurance; the latter has been upheld as valid.

In *Jokich v. Union Oil Co. of California*, 214 Ill. App. 3d 906, 907, 574 N.E.2d 214, 215 (1991), a contractor's employee sustained serious injuries when he fell off a temporary staircase provided by the oil refinery's owner while attempting to repair an overhead crane. The insurance provision in *Jokich* required the contractor to name the owner as an additional insured and that "the insurance to be carried would be 'in no way limited by any limitations expressed in numbered [paragraph] 17 [the indemnity provision] nor any limitation placed on the indemnity therein given as a matter of law.' " *Jokich*, 214 Ill. App. 3d at 912, 574 N.E.2d at 218. The insurance provision further required coverage protecting the oil refinery's owner under the Structural Work Act, which requires a showing of fault to bring a violation of

that Act. *Jokich*, 214 Ill. App. 3d at 912, 574 N.E.2d at 218. This court in *Jokich* concluded that the only interpretation of the insurance provision was that the insurance policy would provide coverage for claims arising from the owner's own negligence. *Jokich*, 214 Ill. App. 3d at 912-13, 574 N.E.2d at 219. The *Jokich* court concluded that the insurance clause "was clear, unambiguous and enforceable in requiring [the contractor] to procure insurance coverage for liability arising from [the owner's] own negligence." *Jokich*, 214 Ill. App. 3d at 913, 574 N.E.2d at 219.

This court also examined the validity of an insurance clause in *Bosio v. Branigar Organization, Inc.*, 154 Ill. App. 3d 611, 506 N.E.2d 996 (1987). The *Bosio* court upheld as valid an insurance provision requiring public liability insurance, which is also known as general liability insurance, "for all personal injury claims arising from the performance of the contract." *Bosio*, 154 Ill. App. 3d at 615, 506 N.E.2d at 999. This court held that the insurance provision was valid and enforceable regarding insurance for the owner's negligence since the policy stated "all personal injury claims arising from the performance of the contract." *Bosio*, 154 Ill. App. 3d at 615, 506 N.E.2d at 999.

In *St. John v. City of Naperville*, 155 Ill. App. 3d 919, 920, 508 N.E.2d 1128, 1129 (1987), the City of Naperville sued a contractor alleging a breach of contract to insure, among other causes of actions. The insurance contract in *St. John* required the contractor to procure insurance " 'to indemnify and save harmless the Owner, their agents and employees from and against all loss and expenses *** for damages because of bodily injury *** arising out of or in consequences of the performance of this work, whether such injuries to persons or damage to property be due to the negligence of the Contractor, his Subcontractor or the Owner.' " *St. John*, 155 Ill. App. 3d at 921, 508 N.E.2d at 1130. This court held that the insurance provision was valid and concluded that the trial court did not err in granting summary judgment in the City of Naperville's favor based on the contractor's failure to procure the required insurance. *St. John*, 155 Ill. App. 3d at 924, 508 N.E.2d at 1132.

We note that in *Jokich*, *Bosio* and *St. John*, this court upheld as valid provisions in contracts to procure insurance on behalf of another party regardless of that other party's negligence. Thus, this court has upheld insurance provisions requiring one party to insure against the negligence of another party. Accordingly, we conclude that the insurance provision here agreeing to name Prime Group as an additional insured on Ala Carte's comprehensive general liability insurance policy covering all losses notwithstanding any act or negligence of Ala Carte or Prime Group was enforceable. Although the above-cited cases relate

to construction contract scenarios, we find this court's reasoning in those cases applicable to the instant case. We also note that in the context of leases and allocating risks between the tenant and landlord, "[t]he tenant can ordinarily insure against any liability that arises on or about the premises, regardless of who is at fault." S. Saltz, *Allocation of Insurable Risks in Commercial Leases*, 37 Real Prop. Prob. & Tr. J. 479, 486 (2002).

We agree with the long-standing public policy prohibiting a tenant from indemnifying a landlord for its tortious conduct. The issue here, however, does not involve the tenant's promise to indemnify the landlord for its tortious conduct, which was expressly prohibited in section 14 of the lease, but rather involves the tenant's promise to procure insurance naming the landlord as an additional insured and insuring against the tenant's or landlord's negligent acts. These two promises of indemnification and procurement of insurance are distinct from one another. We must still turn to the insurance policy to determine whether Ala Carte fulfilled its promise to insure as provided for in the lease.

The parties agree, as does this court, that Ala Carte added Prime Group as an additional insured to its comprehensive general liability insurance policy underwritten by Clarendon. A question still remains, however, whether Ala Carte procured the insurance coverage it promised to do under the lease. The lease's express language required the procured insurance to provide that "all losses shall be payable notwithstanding any act or negligence of the Tenant or Landlord." According to the "Policy Change No. 8 Endorsement" of the Clarendon policy, "If liability for injury or damage is imposed or sought to be imposed on the additional insured because of: (a) Its own acts or omissions, this insurance does not apply." Reviewing this endorsement in conjunction with section 36(c)(iii) of the lease, we conclude that the insurance procured by Ala Carte failed to meet the insurance requirements of section 36(c)(iii) because the endorsement overrode the policy, thereby eliminating insurance covering Prime Group for its own acts and omissions.

We note that Ala Carte argues on appeal that the lease requires Ala Carte to provide insurance and indemnification for occurrences where it is solely negligent, or where both Ala Carte and Prime Group are negligent, but the lease specifically precludes Ala Carte from any responsibility when Prime Group is solely negligent. We agree with Ala Carte that it is precluded from any responsibility to indemnify Prime Group for its sole negligent acts. We reiterate that the responsibility to indemnify is distinct from the responsibility to procure insurance for another's negligent acts. Again, a promise to

indemnify another for its own negligent acts violates Illinois public policy. *Economy Mechanical Industries, Inc.*, 294 Ill. App. 3d at 155-56, 689 N.E.2d at 203. We do not agree with Ala Carte that the lease specifically precludes Ala Carte from any responsibility to procure insurance relating to Prime Group's sole negligence. Reading the express language of the words used in the lease does not lend support to such a conclusion.

We find instructive this court's decision in *Sears, Roebuck & Co. v. Charwil Associates, Limited Partnership*, 371 Ill. App. 3d 1071, 864 N.E.2d 869 (2007). The issue in *Sears* was whether a mall landlord breached its contract with a tenant to procure the insurance required under a lease. *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1076, 864 N.E.2d at 873-74. According to the lease, the landlord promised to obtain and maintain insurance for "all liability from any claims that arose from a customer's use of the common area." *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1078, 864 N.E.2d at 875. This court held that where the landlord obtained comprehensive general limited liability insurance that did not cover a customer's use of the common area, the landlord breached its promise to provide insurance according to the lease agreement. *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1078, 864 N.E.2d at 875. This court also stated that if the parties did not intend to provide coverage for "any and all" claims, then the parties "could have provided exclusions in the lease to limit insurance coverage." *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1077, 864 N.E.2d at 874. Here, although the insurance paragraph included a mutual exculpatory provision with each agreeing to release the other against claims for damage insured against in the lease, the lease does not expressly include an exception to the promise to procure insurance relating to Prime Group's sole negligence. Adopting the reasoning of *Sears*, if Prime Group and Ala Carte wanted to exclude Prime Group's sole negligent acts from the insurance Ala Carte was obligated to procure, then such an exclusion could have been expressly stated in the lease. No express limitation relating to the procurement of insurance relating to Prime Group's sole negligence was included in the insurance provision of the lease, and we are unwilling to rewrite the lease to add such a limitation. Moreover, the endorsement excluding coverage would not have been necessary unless Clarendon was seeking to limit the coverage provided for under the policy. To the extent that Prime Group was not covered under the procured insurance policy, Ala Carte breached its duty to procure insurance. See *Sears, Roebuck & Co.*, 371 Ill. App. 3d at 1078, 864 N.E.2d at 875. Thus, the trial court erred in granting summary judgment in Ala Carte's favor. We reverse the trial court's order entering summary judgment in Ala

Carte's favor and remand this cause to the trial court with directions to enter summary judgment in Prime Group's favor and to conduct proceedings consistent with this opinion, including conducting a hearing addressing damages if warranted.

Accordingly, the judgment of the trial court is reversed and remanded with directions.

Reversed and remanded with directions.

NEVILLE and STEELE, JJ., concur.