2023 IL App (1st) 221802-U

No. 1-22-1802

Order filed December 14, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BLUE ISLAND INDUSTRIAL, LLC, an Illinois Limited Liability Company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| vs. | ) ) | No. 21M1700989 |
| SIGMA DT, LLC, an Illinois Limited Liability Company, | ) ) ) | Honorable Robert F. Harris, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1      *Held*: The trial court properly found that Sigma satisfied the requirements for abatement of rent. The trial court's calculations of abatement was supported by the evidence.

¶ 2      Blue Island Industrial, LLC (Landlord) filed a joint action against its tenant Sigma DT, LLC (Sigma) seeking possession of its leased premises and past due rent. Following a bench trial, the circuit court granted Landlord possession of the premises and a monetary judgment totaling $56,685.44.

¶ 3 In its findings, the circuit court determined that Sigma had a basis to abate a portion of its rent pursuant to certain terms of the lease. The court also made various calculations in determining past due rent. Landlord appeals the court's finding that Sigma was entitled to abate its rent and argues the court's method in calculating past due rent was improper. We affirm.[1]

¶ 4 I. BACKGROUND

¶ 5 Landlord owns commercial property located at 3500 West 127th Street in suburban Blue Island. On March 1, 2020, Landlord leased a portion of that property to Sigma. The lease provided Sigma was to occupy Unit D, which comprised approximately 27,000 square feet of the approximately 150,000 square foot building.

¶ 6 Pursuant to the lease, the monthly rent was $8887.50 for the first year, $9154.12 for the second year, and $9428.74 for the remainder of the lease. The length of the lease was 37 months, with an expiration date of March 31, 2023.

¶ 7 The dispute began shortly after the parties executed the lease. According to Sigma, its principal Vahap Dogan notified the Landlord's principal, Daniel McLachlan, that the section of roof covering Unit D was leaking and needed repair. Sigma's business was refurbishing industrial robots, and robotic integration and animation. As such, it could ill afford water damage to its equipment.

¶ 8 The lease contemplated that Landlord would need to make certain improvements to the property. Section 2.4 of the lease, titled "Lessor's Improvement Work," provided that Landlord was to "[r]epair the existing leak in the roof which is effecting the use and enjoyment of the space." Relying on this section of the lease, Dogan first contacted McLachlan on March 23, 2020, and requested that Landlord perform necessary repairs to the roof.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 9        There were further requests for repair made on May 28, June 8, June 22, June 29, November 25, December 12, and December 16. In each of these instances, Dogan would either speak with McLachlan by telephone, text, email, or use WhatsApp mobile application[2] to inform him of necessary roof repairs. Dogan testified that WhatsApp was his preferred manner of communication as it allowed him to simultaneously send video images of the leaking roof while explaining the need for repair.

¶ 10       In April 2020, after receiving photos and video through WhatsApp, Landlord voluntarily reduced Sigma's April rent by one third. McLachlan testified that, as a "courtesy," he gave Sigma "two weeks off due to repair."  Sigma paid $3000 as April's rent.

¶ 11       Even after Landlord sent a repairperson, Sigma continued to complain of leaks and Landlord continued to promise repair of the roof. During an inspection of the premises Landlord determined the entire space was usable, but that Sigma had its robots in only approximately 50% of the leased space.

¶ 12       In January 2021, Sigma stopped paying rent and most of the utilities that it had agreed to be responsible for. Dogan continued to communicate with McLachlan, telling him that despite the supposed repairs, the roof continued to leak. Dogan also wrote McLachlan telling him what a horrible landlord he was and that Blue Island Industrial had failed to fulfill its responsibilities. At no point did Dogan notify Landlord that Sigma was abating rent using the procedure provided for in the lease.

¶ 13       Landlord filed its complaint for joint action seeking possession, past due rent, and utilities on March 19, 2021. After amending its complaint and following motion practice, a bench trial

_____

[2]WhatsApp mobile application is a freeware, cross-platform service that allows users to send text, voice and video messages, make voice and video calls, and share documents and other content.

commenced in April 2022. Dogan, McLachlan, and Sigma's expert witness Isaac Pflaum, testified at trial.

¶ 14 The trial court issued its written "Trial Order" on August 29, 2022, granting Landlord possession of the premises and a monetary judgment for $56,685.44. On November 2, 2022, after considering Sigma's posttrial motion to modify the judgment and the Landlord's petition for attorney fees, the court entered a final order. The court denied Sigma's motion and awarded Landlord $34,189.42 in attorney fees and costs. Including the earlier award, the final judgment in Landlord's favor totaled $90,874.86. On December 1, 2022, Landlord filed its timely notice of appeal.

¶ 15 II. ANALYSIS

¶ 16 Landlord asks this court to resolve two issues—did the trial court err in its (1) determination that Sigma met the lease's Section 12.4(c) requirements to abate the rent and (2) past due rent calculation where it reduced Sigma's rent to 41% of the total due based upon Dogan's testimony?

¶ 17 A. Rent Abatement

¶ 18 We first resolve whether the requirements for rent abatement as contemplated in the lease have been satisfied. Landlord claims that Sigma failed to send it formal notice of its intent to abate rent, pursuant to the terms of the lease. As notice of Sigma's intent to abate rent is a condition precedent, without such notice, Landlord argues, there was no right for Sigma to abate. Sigma counters that it is of no moment that it failed to provide formal notice when Landlord had actual notice of the abatement event.

¶ 19 We agree with Sigma that Landlord had actual notice of an abatement event as contemplated by section 12.4(c) of the lease. "The interpretation of a lease is a question of law, to be determined by the reviewing court independent of the trial court's judgment." *Nutrasweet Co.*

*v. American National Bank & Trust Company of Chicago*, 262 Ill. App. 3d 688, 694 (1994); *Forest Pres. Dist. of Du Page Cnty. v. First Nat. Bank of Franklin Park*, 2011 IL 110759, ¶ 24 (purely legal questions are reviewed under a *de novo* standard of review). As a lease is a contract, contractual rules of interpretation apply. *Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849, ¶ 13. According to well-established principles of contract interpretation, we must construe a contract to give effect to the parties' intent. *Id*. We do this by interpreting the contract as a whole, viewing each provision in light of the other provisions. *In re Marriage of Grandt*, 2022 IL App (2d) 210648, ¶ 25. "When presented with clear and unambiguous language, the intent of the parties must be determined from the language of the contract itself and given its plain and ordinary meaning." *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18. "Where doubt or uncertainty exists as to the meaning of the language used in a lease, it should be construed against the lessor and in favor of the lessee to find the rational and probable agreement between the parties." *Public Bldg. Com'n of Chicago v. Yellen*, 2013 IL App (1st) 112638, ¶ 34 (citing *Sears, Roebuck & Co. v. Charwil Associates, Ltd. Partnership*, 371 Ill. App. 3d 1071, 1076 (2007)).

¶ 20     "A condition precedent is defined as a condition in which performance by one party is required before the other party is obligated to perform." *Owen v. Village of Maywood*, 2023 IL App (1st) 220350, ¶ 26. If a lease contains an express condition precedent, that condition must be strictly complied with. *Id*. A condition precedent "must be performed before the other party to a contract is obligated to perform." *Crystal Lake Ltd. P'ship v. Baird & Warner Residential* Sales, Inc., 2018 IL App (2d) 170714, ¶ 74.

¶ 21     Section 12.4(c) of the lease explains that an "Abatement Event" occurs, in relevant part, if "Lessee is prevented from using, and does not use, the Premises or any portion thereof, as a result

of (i) any repair, maintenance or alteration performed by Lessor, or which Lessor failed to perform ***." The Section provides that "Lessee shall give the Lessor notice by email or otherwise of such Abatement Event," and mandates that, if the event continues for a set time, then the base rent "shall be abated or reduced, as the case may be, as of the date that Lessee delivered such notice to Lessor until such time as Lessor has cured the Abatement Event in accordance with the terms and conditions of this Lease." Further, the lease specifies that the amount of rent to be abated is the percentage of the base rent proportionate to the percentage of space rendered unusable due to the Landlord's failure to repair.

¶ 22    Section 19 of the lease provides that:

"[a]ll notices required or permitted by this Lease shall be in writing and may be delivered in person (by hand or by courier) or may be sent by regular, certified or registered mail or reputable overnight courier, with postage prepaid, email, or by facsimile transmission, and shall be deemed sufficiently given if served in a manner specified in this Paragraph 20 [*sic*]."

¶ 23    Sigma argues that Landlord had actual notice of its complaints through the numerous emails, phone calls, and WhatsApp communications. Landlord insists Sigma provided no notice that it was "prevented from using" or "did not use the Premises or any portion thereof." Similarly, Landlord contends "[t]here was no actual notice that roof leaks were 'substantially' interfering with Tenant's 'use of or ingress to or egress from the Premises.' " Ultimately, Landlord alleges there was no actual notice of an Abatement Event triggering the periods under the Abatement Provision. This argument is disingenuous.

¶ 24    Landlord does not dispute that Dogan provided repeated notice via WhatsApp, text messages, and phone calls that the property's roof was leaking and needed repairs. McLachlan

testified that he received no notification by email or otherwise that Sigma was going to withhold rent due to needed repairs. Nor did he receive notification from Dogan that he was unable to use all or a portion of the leased premises. However, when asked if he received a reason that Dogan stopped paying rent, Landlord conceded that Dogan gave him "excuses regarding the roof leak," but "no specific reason" why Dogan was not going to pay rent. Dogan testified he sent McLachlan a December 16, 2020 WhatsApp message threatening to stop paying the rent if the roof leak was not fixed. The trial court concluded that, while Sigma did not communicate its intention to abate by sending a specific email or writing saying so, the "totality of the circumstances" convinced the court that the requirements of the lease had been satisfied. We agree.

¶ 25    It is undisputed that Sigma did not formally and specifically notify Landlord that it was going to abate. Nonetheless, it is clear that an "Abatement Event" occurred. Both parties were, or should have been, aware at the time of the lease signing that the roof leaked. The lease explicitly imposed a duty on the Landlord to mend the leaking roof. McLachlan testified that he sent workers on several occasions to perform roof repairs. He also testified that at least some percentage of the premises was not being used by Sigma because of the water conditions. He additionally admitted that he voluntarily reduced the rent for at least one month as a "courtesy" to Sigma because of the water problems.

¶ 26    We find persuasive Sigma's argument that the primary purpose of Section 12.4 of the lease is to ensure the Landlord is on notice that an "Abatement Event" has taken place and that the tenant may abate rent as a result. "In general, the object of notice is to inform the party notified, and if the information is obtained in any way other than formal notice, the object of notice is attained." *Vole, Inc. v. Georgacopoulos*, 181 Ill. App. 3d 1012, 1019 (1989); *Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, 2019 WL 3037075 at *6 (N.D. Ill. July 11, 2019). Here, Landlord clearly had actual

notice of the ongoing "Abatement Event" at the Premises. While Landlord repeatedly notes that Sigma did not properly follow the notice requirements of the lease, McLachlan himself testified that both parties communicated solely through WhatsApp, email, and phone calls. He conceded that neither party ever used FedEx nor otherwise sent formal letter communications. Further, McLachlan testified that, after examining the lease provisions, even he did not know "exactly how [Dogan's] supposed to notify [him]" regarding an abatement event. We find the trial court did not err when it found that, based on the totality of the circumstances, the lease had been complied with.

¶ 27        We further note that even though notice was not sent as required by the lease agreement, the record evinces that this was standard practice for *both* Landlord and Sigma. The two communicated solely through telephone calls and texts and the WhatsApp mobile application. Landlord never informed Sigma it determined these communication methods to be improper and in fact utilized the same methods. This conduct not only suggests that Landlord had actual notice, but it also is sufficient to permit a trial court to conclude that Landlord waived strict compliance with the notice provisions.

¶ 28                                B. Trial Court's Calculation

¶ 29        We next consider Landlord's argument that the trial court incorrectly calculated the past due rent amount. Specifically, Landlord argues that the court misapprehended certain trial testimony, which caused the court to miscalculate the past due rental amount.

*¶ 30*        Where a trial court makes an award of damages following a bench trial, the standard of review is whether "the trial court's judgment is against the manifest weight of the evidence." *2460-68 Clark, LLC v. Chopo Chicken, LLC*, 2022 IL App (1st) 210119, ¶ 28. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Battaglia v. 736*

*N. Clark Corp.*, 2015 IL App (1st) 142437, ¶ 23 (quoting *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001)). We give deference to the trial court as finder of fact under this standard "because it is in the best position to observe the conduct and demeanor of the parties and witnesses and achieves a degree of familiarity with the evidence that a reviewing court cannot possibly obtain." *Granville Tower Condominium Ass'n v. Escobar*, 2022 IL App (1st) 200362, ¶ 27. In other words, we will not reverse the "trial court's decision merely because different conclusions can be drawn; an opposite conclusion must be clearly evident." *Archon Construction Company, Inc. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409 (quoting *Walker v. Ridgeview Construction Co.*, 316 Ill. App. 3d 592, 595 (2000)).

¶ 31      In its ruling, the court found that Sigma owed only 41% of the monthly rent due during the months that Sigma had chosen to abate. The court reasoned that McLachlan's testimony that Sigma had robots in 50% of the leased space, taken against Dogan's testimony that Sigma only used approximately one third of the available space, gave it a basis to reach the 41% figure. The trial court noted that, save for the aforementioned testimonies, no evidence was presented regarding the percentage of available space that was being, or could be, used. There is nothing in the record to indicate that the court failed to understand the witnesses' testimonies. Landlord's argument is simply that the court failed to construe McLaughlan's testimony the way Landlord believes it should have been interpreted. However, the court, as the trier of fact, was free to assess the testimony as it saw fit. It is well established that we defer to the trier of fact to determine "the credibility of witnesses and the weight to be given to their testimony," *People v. Feliciano*, 2020 IL App (1st) 171142, ¶ 125 (quoting *People v. Jordan*, 218 Ill. 2d 255, 274 (2006)), and we will not substitute our judgment for that of the fact finder. *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 199 (2011).

¶ 32    The court found Dogan's testimony to be credible and weighed that testimony against that of the other witnesses. Having done so, the court reached its conclusion regarding the portion of usable space at the premises. Landlord does not proffer, nor can it point to, any other evidence regarding how much of the floor space was usable other than McLachlan's testimony that "*** all the space was accessible. His robots—I would say he had enough robots to cover about 50% of the space. But all the space was useable." Lacking evidence that established the exact percentages of usable rental space, the trial court properly made calculations based on the proffered testimony. We cannot say that an opposite conclusion is apparent or that the findings are unreasonable, arbitrary, or not based on the evidence. Accordingly, we conclude that the trial court did not err in finding that abatement to 41% of the rent due was warranted and affirm the trial court's calculation of Sigma's past due rent obligation.

¶ 33    III. CONCLUSION

¶ 34    Based on the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 35    Affirmed.